COMMONWEALTH vs. JAMES H. GIBBONS.

Middlesex.    March 6, 1979. — August 16, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Rape. Witness*, Competency, Psychiatric examination. *Practice, Criminal*, Psychiatric examination, Judicial discretion.

A judge in a criminal proceeding erred in ordering that a prosecution witness submit to an examination conducted by a psychiatrist selected by the defendant rather than requesting the Department of Mental Health to assign a qualified physician as required by G. L. c. 123, § 19. [768-769]

A judge in a criminal proceeding erred in ordering a prosecution witness to undergo a psychiatric examination pursuant to G. L. c. 123, § 19, upon the bare assertion of defense counsel that the witness had a history of psychological problems for which she was being treated and that she might "make up things." [769-772]

Before ordering an involuntary psychiatric examination pursuant to G. L. c. 123, § 19, a judge is required to hold some type of evidentiary hearing to determine the likelihood that the examination would produce substantial evidence bearing on the witness's capacity to perceive, remember, and recount the witness's knowledge of the facts. [772-773]

A judge's order that a witness undergo an involuntary psychiatric examination pursuant to G. L. c. 123, § 19, must specify the scope and purpose of the examination so as to limit the invasion of the witness's privacy. [773]

The standards governing court-ordered psychiatric examinations pursuant to G. L. c. 123, § 19, are the same for sex offense cases as they are for all other cases. [774]

INDICTMENT found and returned in the Superior Court on June 9, 1977.

Motions for a psychiatric examination of a witness, and to dismiss the indictment on the ground that the witness refused to submit to a psychiatric examination by a defense psychiatrist, were heard by *Garrity*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert M. Raciti,* Legal Assistant to the District Attorney, for the Commonwealth.

*Arnold R. Rosenfeld* for the defendant.

ABRAMS, J. We transferred the case to this court on our own motion to consider the Commonwealth's assertion that a judge of the Superior Court abused his discretion in ordering a complainant in a rape case to submit to an examination conducted by a psychiatrist selected by the defendant James Gibbons. See G. L. c. 123, § 19.[1] After the complainant refused to submit to such an examination, the judge dismissed the indictment pending against Gibbons, and the Commonwealth appealed. See G. L. c. 278, § 28E. We reverse the order dismissing the indictment and remand the case to the Superior Court.

We summarize the pretrial proceedings.[2] Gibbons moved for a psychiatric examination of the complainant pursuant to G. L. c. 123, § 19. In support of Gibbons' motion, defense counsel[3] stated that the complainant has a history of mental illness, that "around this particular time [the complainant] was hospitalized," and that the complainant has been under the care of a psychiatrist for approximately two years. He further stated that this might be a situation where the complainant might be given to "make up things," and that § 19 is "directed specifically for this type of case." Finally, he added that

---

[1] General Laws c. 123, § 19, inserted by St. 1970, c. 888, § 4, reads as follows: "In order to determine the mental condition of any party or witness before any court of the commonwealth, the presiding judge may, in his discretion, request the department [of Mental Health] to assign a qualified physician, who, if assigned shall make such examinations as the judge may deem necessary."

[2] The record before us consists of transcripts of the pretrial hearings and a transcript of the grand jury testimony.

[3] Gibbons' counsel at the hearing does not represent Gibbons on appeal.

the probable cause hearings were delayed due to the complainant's mental problems and that cross-examination at the probable cause hearing had been curtailed for the same reason.

The Commonwealth told the judge that the complainant was twenty-seven years old and had a bachelor of science degree from Boston College. The Commonwealth agreed that the complainant did have a history of mental illness and stated that the complainant's medical records would be made available to the defense and to the judge if the judge so desired. The Commonwealth told the judge that the reason the cross-examination at the probable cause hearing was terminated was that it was "far out of bounds at that point," and not because she was a mental patient.[4]

The judge ruled that it was appropriate to order the examination and asked the defendant to recommend a psychiatrist. The defendant agreed to submit names of psychiatrists to the judge. The judge "guessed" it was "appropriate" to have the defendant select the psychiatrist, since that would ensure an "independent" psychiatrist.

At the subsequent hearing, the Commonwealth informed the judge that the witness would decline to submit to examination by a psychiatrist selected by Gibbons. The judge then dismissed the indictment.

The judge failed to follow the clear mandate of G. L. c. 123, § 19, and "request the department [of Mental Health] to assign a qualified physician." The legislative requirement that a psychiatric examination under G. L. c. 123, § 19, be conducted by an impartial physician prevents parties from using the examination as a tool to

---

[4] Gibbons had earlier filed a motion to dismiss the indictment alleging that a District Court judge improperly restricted cross-examination of the complainant at the probable cause hearing. After hearing, a Superior Court judge ruled that there had been no error in limiting the cross-examination of the complainant because "defense counsel was engaged in harassment of the witness."

harass or embarrass the person examined.[5] Moreover, appointment of an impartial physician may encourage cooperation by the person examined, without which the value of the examination is highly questionable. There is general agreement that an uncooperative patient cannot be satisfactorily examined by a psychiatrist. See M. Guttmacher & H. Weihofen, Psychiatry and the Law 286-287 (1952). See also *Ballard* v. *Superior Court,* 64 Cal. 2d 159, 177 (1966). See generally O'Neale, Court Ordered Psychiatric Examinations of a Rape Victim in a Criminal Rape Prosecution — Or How Many Times Must a Woman be Raped, 18 Santa Clara L. Rev. 119, 147 (1978). Hence the judge's order that Gibbons, rather than the Department of Mental Health, select the psychiatrist is an error of law.

The Commonwealth also argues that there was insufficient showing of need to justify ordering the witness to submit to a psychiatric examination against her will on the issue of competency.[6] We agree.

---

[5] Gibbons argues that the Commonwealth did not object to the judge's order that Gibbons himself should name the psychiatrist. However, the record discloses that the Commonwealth persistently and vehemently opposed examination by a psychiatrist named by Gibbons. We do not understand why defense counsel failed to bring to the judge's attention the fact that § 19 requires a physician assigned by the Department of Mental Health to conduct the examination. The Commonwealth also failed to bring this requirement specifically to the judge's attention.

[6] The Commonwealth also asserts that a psychiatric examination under G. L. c. 123, § 19, may not be ordered to determine a witness's credibility, which the Commonwealth claims is solely a question for the jury. See *People* v. *Souvenir,* 83 Misc. 2d 1038, 1040-1041 (N.Y. Crim. Ct. N.Y. 1975). Of course, no psychiatrist can testify as to whether a witness is telling the truth in a specific instance. We need not decide whether a § 19 examination may be ordered to determine the effect of a particular mental or emotional condition on the ability of the witness to tell the truth. The judge said he was ordering the examination on the issue of the witness's competency. The Commonwealth concedes that competency is a valid reason to order an examination under G. L. c. 123, § 19. See *Commonwealth* v. *Welcome,* 348 Mass. 68, 69 (1964).

The standard governing the competency of witnesses is clear. A witness is competent to testify if he or she is aware of a duty to tell the truth and has personal knowledge of relevant facts. Competency also depends on the capacity of a witness to perceive, remember, and recount his or her knowledge of the facts. *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128-129 (1934). See *Commonwealth* v. *Sires*, 370 Mass. 541, 546 (1976); *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964). See generally W. B. Leach & P. J. Liacos, Massachusetts Evidence 135 (4th ed. 1967). McCormick, Evidence § 62, at 140 (2d ed. 1972). If the competency of a witness is placed in issue, "it is the duty of the judge to examine into the question of [the witness's] competency, and to reject [the witness] unless [the judge] is satisfied that [the witness] is competent." *Commonwealth* v. *Reagan*, 175 Mass. 335, 340 (1900). See *Commonwealth* v. *Welcome, supra* at 69.

The evidence before the judge of the witness's grand jury testimony should have dispelled any doubt raised by the defendant's counsel as to the witness's competency.[7] A reading of the testimony by the complainant and the police reveals that she could perceive, remember and recount the events.

There is no basis in this record on which the judge could have determined that the complainant lacked sufficient understanding to comprehend the oath. The defendant offered no reasons at the hearings or in his motion for examination which indicated that the witness's actual mental condition affected her ability or willingness to tell the truth. Thus the judge had no basis on which to order an involuntary examination for competency.

---

[7] Defense counsel's representations to the judge concerning the reason for restriction of cross-examination at the probable cause hearing at best ignore, and perhaps misrepresent, the findings of the previous judge at the hearing on the motion to dismiss. See note 4, *supra*. See also S.J.C. Rule 3:22, DR 7-102 (A) (4); DR 7-102 (A) (5), 359 Mass. 796, 818 (1972).

The mere fact that a witness has received psychiatric treatment does not render the person incompetent as a witness. A bald assertion that a complainant may be mentally ill is insufficient. See, e.g., *People* v. *Seel*, 68 Ill. App. 3d 996, 1006 (1979); *State* v. *Kahinu*, 53 Haw. 536, 547 (1972), cert. denied, 409 U.S. 1126 (1973). Sanity is not the test of a witness's competency. *Commonwealth* v. *Zelenski, supra* at 129. *Commonwealth* v. *Sires, supra. Kendall* v. *May*, 10 Allen 59, 63 (1865). See G. L. c. 123, § 25; G. L. c. 233, § 20. Compare *United States* v. *Pacelli*, 521 F.2d 135, 140-141 (2d Cir. 1975), cert. denied, 424 U.S. 911 (1976) (defects in witness's testimonial capacity obvious to all). See generally Note, Psychiatric Examinations of Witnesses: Standards, Timing and Use by Indigents, 55 Iowa L. Rev. 1286, 1297 (1970); O'Neale, *supra* at 150 & n.197.

Nevertheless, if the judge were concerned about the witness's competency, he should have held a voir dire examination of the witness,[8] or he should have examined the witness's medical records, or he should have heard from the witness's psychiatrist before ordering the § 19 examination. In this case the judge could have deferred his ruling until after the Commonwealth's counsel and the defense counsel met with the witness's psychiatrist — an offer made by the Commonwealth.[9] The Common-

---

[8] We are at a loss to explain the judge's assertion that, though a voir dire is appropriate to determine the competency of a retarded witness, the present case is a "different bag." The judge's comment is particularly perplexing in light of his statements evidencing recognition that rape cases must be treated no differently from any other type of case.

[9] The Commonwealth has conceded that the witness's history of mental illness and psychiatric treatment is admissible for impeachment. Since the records are not before us, we have assumed the correctness of the Commonwealth's concession. However, it is for the trial judge to determine whether or not medical records show a "mental impairment . . . [which] may be the subject of proper impeachment . . . [by] affect[ing] the witness's capacity to perceive, remember and articulate correctly." *Commonwealth* v. *Caine*, 366 Mass. 366, 369 (1974). *Commonwealth* v. *Sacco*, 255 Mass. 369, 439 (1926).

wealth points out that these suggestions were made to the judge and that the judge summarily rejected all options except the involuntary examination. The record supports the Commonwealth's statements.

We think that a decision to order an involuntary psychiatric examination under G. L. c. 123, § 19, must be based on informed discretion. "By such expression is implied absence of arbitrary determination, capricious disposition, or whimsical thinking. . . . The word imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion, enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy nor warped by prejudice nor moved by any kind of influence save alone the overwhelming passion to do that which is just." *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 496-497 (1920). Accord, *Commonwealth* v. *Dougan*, 377 Mass. 303, 317 (1979); *Commonwealth* v. *Amazeen*, 375 Mass. 73, 84 (1978); *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976).

The judge ordered the examination, stating that "it was represented to me she had had some substantial — or mental delusions in the past." The judge apparently was willing to rely on defense counsel's assertion that because the complainant had a history of psychological problems for which she was being treated she might "make up things." The defendant's attorney was "not qualified to give an opinion with regard to alleged psychological abnormalities." *State* v. *Kaseman*,        S.D. (1978).[a]  Moreover, the judge in relying on counsel's assertion *knew* that counsel had not yet seen the complainant's medical record. Therefore, the judge's exercise of his discretion was arbitrary and capricious; it was not a thoughtful and reasoned decision designed to reach a just result. Of course, "conduct manifesting abuse of judicial discretion will be reviewed and some relief afforded." *Davis* v. *Boston Elevated Ry., supra* at 497.

---

[a] 273 N.W.2d 716, 725 (1978).

Moreover, when unsupported allegations and conflicting statements are offered in support of a motion for an involuntary psychiatric examination, at the very least the exercise of discretion implies that an evidentiary hearing be held. *State* v. *Butler*, 27 N.J. 560, 605 (1958). We see no reason to base such a vital decision on representations of counsel when witnesses and medical records are available. See *State* v. *Looney*, 294 N.C. 1, 4-5 (1978). After reviewing the available evidence, the judge can then determine whether there is a "compelling need" for an involuntary examination and whether there is a likelihood that an involuntary examination will produce substantial evidence bearing on the witness's testimonial capacity. See *Ballard* v. *Superior Court*, 64 Cal. 2d 159, 174-175 & n.10, 176-177 (1966); *State* v. *Kahinu*, 53 Haw. 536, 546, 547 n.7 (1972). See also *State* v. *Klueber*, 81 S.D. 223, 230 (1965); *Forbes* v. *State*, 559 S.W.2d 318, 320 (Tenn. 1977); *State* v. *Miller*, 35 Wis. 2d 454, 471-472 (1967).

Furthermore, § 19 requires the judge to order "such examinations as the judge may deem necessary." We think that the language of the statute requires that the judge guide the Department of Mental Health by setting forth the scope and purpose of the § 19 examination. Such a requirement forces the judge to minimize the seriousness of the invasion of the witness's privacy by the involuntary examination. See *State* v. *Looney*, *supra* at 26-27. "[A] psychiatric examination may seriously impinge on a witness' right to privacy; the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself could serve as a tool of harassment." *United States* v. *Benn*, 476 F.2d 1127, 1130-1131 (D.C. Cir. 1972).

In view of our holding, we need not reach the Commonwealth's further argument that the judge erred in dismissing the indictment over the Commonwealth's objection. See *Commonwealth* v. *Brandano*, 359 Mass. 332, 334

(1971). See also *People* v. *Mills,* 87 Cal. App. 3d 302, 308-309 (1978). However, we note that there are a myriad of possible sanctions less drastic than dismissal of the Commonwealth's case. See, e.g., *Ballard* v. *Superior Court,* 64 Cal. 2d 159, 177 (1966) (witness refusing to undergo examination allowed to testify, but jury informed of refusal); McCormick, Evidence § 62, at 140-141 (2d ed. 1972) (bar witness from testifying).[10]

Finally, we add that, contrary to defense counsel's suggestion, psychiatric examinations under § 19 are not more appropriate in rape cases that in other criminal cases. In this Commonwealth, the standards governing court-ordered psychiatric examinations are the same for sex offense cases as they are for all other cases. G. L. c. 123, § 19. See *Commonwealth* v. *Welcome,* 348 Mass. 68, 69 (1964). See also *United States* v. *Wiley,* 492 F.2d 547, 553-554 (D.C. Cir. 1973) (Bazelon, C.J., concurring). See generally *State* v. *Wahrlich,* 105 Ariz. 102, 106 (1969); *People* v. *Rincon-Pineda,* 14 Cal. 3d 864 (1975); *State* v. *Looney,* 294 N.C. 1, 26 (1978); *State* v. *Clasey,* 252 Or. 22, 23-24 (1968). Accord, Note, Corroborating Charges of Rape, 67 Colum. L. Rev. 1137, 1143 (1967); L. Schultz, Rape Victimology 117 (1975). Compare 3A J. Wigmore, Evidence § 924a at 736 (Chadbourn rev. 1970), with *Commonwealth* v. *Bohannon,* 376 Mass. 90, 95-96 (1978).

In sum, we hold that a psychiatric examination under G. L. c. 123, § 19, must be conducted by a physician assigned by the Department of Mental Health; that the judge must hold some type of evidentiary hearing before ordering an involuntary examination; and that the judge's order must specify the scope and purpose of the examination so as to limit the invasion of the witness's privacy as well as the humiliation and indignity associated with an involuntary examination.[11] See, e.g., *United States* v. *Benn, supra; State* v. *Looney, supra* at 26-27.

[10] We also need not decide whether or when a witness ordered to undergo an involuntary psychiatric examination is entitled to be represented by counsel independent of any party.

[11] "We do not regard the protection of the dignity of witnesses as illegitimate." *Commonwealth* v. *Gouveia,* 371 Mass. 566, 570 (1976). See *Commonwealth* v. *Rooney,* 365 Mass. 484, 495-496 (1974) (witness

We reverse the order dismissing the indictment and remand the case to the Superior Court.

*So ordered.*

---

has right to be treated fairly by counsel and judge has power and duty to compel fair and reasonable treatment of witnesses).