COMMONWEALTH vs. NATHAN P. WIDRICK.

Middlesex. May 8, 1984. — August 23, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

Witness, Competency, Psychiatric examination. Indecent Assault and Bat-
tery. Practice, Criminal, Psychiatric examination, Judicial discretion.

A judge has no authority to order the complaining witness in a criminal pro-
ceeding arising from a sexual offense, or a witness who would corroborate
the complaining witness's testimony, to undergo a psychiatric examina-
tion which would be available to impeach those witnesses at trial.
[887-891]

INDICTMENTS found and returned in the Superior Court De-
partment on June 1, 1983.

A pretrial motion for psychiatric examinations of the com-
plaining witness and another witness was heard by Zobel, J.,
and the case was reported by him to the Appeals Court. The
Supreme Judicial Court ordered direct review on its own initia-
tive.

William P. Homans, Jr. (Anne E. Braudy with him) for the
defendant.

Margot Botsford, Assistant District Attorney (Karen J.
Kepler, Assistant District Attorney, with her) for the Common-
wealth.

Holly D. Ladd, Althea Lloyd & Rita Pollak, for The Family
Crisis Program for Sexually Abused Children of Tufts New
England Medical Center & others, amici curiae, submitted a
brief.

HENNESSEY, C.J. On June 1, 1983, a grand jury indicted
the defendant, Nathan P. Widrick, on eight counts of indecent
assault and battery of a child under the age of fourteen years
and on seven counts of rape of a child under the age of sixteen
years. The defendant filed a motion which requested the trial
judge to order psychiatric examinations of the seven year old

complaining witness (R) and her six year old sister (B). The motion did not assert that R and B were incompetent due to a mental disease or defect, but rather suggested that the results of such examinations should be available for impeachment purposes at trial. The judge denied the defendant's motion, concluding that he lacked the authority to issue such an order. However, the judge reported the question to the Appeals Court because he believed the issue was of fundamental importance, had never been authoritatively determined, and seemed likely to arise again.[1] See Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case to this court on our own motion. G. L. c. 211A, § 10 (A). We hold that a trial judge has no authority to order a complaining witness in a criminal proceeding arising from a sexual offense, or a witness who would corroborate the complaining witness's testimony, to undergo a psychiatric examination which would be available to impeach those witnesses at trial.[2]

From the affidavits included with the defendant's motion for psychiatric examinations, we elicit the following facts. R and B resided with their grandparents. On May 10, 1983, B announced to her grandmother that "Nathan [the defendant] touches B's peepee with his mouth and hand." Upon inquiry, R informed her grandmother that when present at their home with his fiancée (the children's babysitter [W]), the defendant would come into her bedroom. While in R's room he would kiss her on the lips, on her neck, suck on her "boobies," pull

---

[1] We have considered whether the judge reported the question presented in this case prematurely because the record does not sufficiently detail the factual basis for the defendant's motion. The answer to the question presented by the report is sufficiently doubtful to warrant the judge's exercise of his discretion to report the case before trial. *Commonwealth* v. *Levin,* 390 Mass. 857, 859 (1984). The parties have briefed and argued the issue; therefore "[t]o dismiss the report now and leave open the possibility that the identical issue will be raised on appeal would be inefficient." *Id.* at 860.

[2] We acknowledge the assistance of the following who submitted an amicus brief: Holly D. Ladd, attorney; Althea Lloyd, attorney; Rita Pollak, attorney; The Family Crisis Program for Sexually Abused Children of Tufts New England Medical Center; The Massachusetts Coalition of Rape Crisis Services; The Boston Area Rape Crisis Center; Dr. Domingo Pagan; Elizabeth Dodson Cole, R.N., and Dr. Nancy Coleman, J.D., Ph. D.

down her underwear, perform cunnilingus (described in the child's own words), and touch her with his fingers. This happened approximately once a week for about two months. Each time this occurred B would come into R's room and R would tell her what happened. B also heard the defendant ask R not to tell anyone.

The defendant suggests that the children fabricated this story because they were troubled by W's relationship with the defendant. He claims the children's actions support this conclusion. For instance, on various occasions, the children would try to divert W's attention when she appeared to be showing the defendant some affection. Additionally, R told W that she had seen her grandparents "doing something," and asked if W and the defendant did those things; that she knew W wore tight blue jeans to cover up the fact that she was pregnant; and that she was to marry the defendant in place of W.

The defendant has denied the accusations against him. After a polygraph ·examination, the certified examiner stated that, in his opinion, the test supported the truthfulness of the defendant's denial of the charges against him. Additionally, Dr. Daniel C. Schuman suggested that R's account of the incident was "consistent with the account of a child who is reciting relevant events in a manner highly influenced by disappointment in a prospective change in a personal relationship." However, he could not say that R's account was false. Further, he had neither seen nor examined R or B.

The defendant asserts that these facts and circumstances exhibit a compelling need for psychiatric examinations of the children to be used for impeachment purposes at trial. He concedes that G. L. c. 123, § 19,[3] which allows a psychiatric examination when a witness's competence to testify is at issue, does not apply. His claim suggests that a judge has inherent

---

[3] General Laws c. 123, § 19, as appearing in St. 1970, c. 888, § 4, provides: "In order to determine the mental condition of any party or witness before any court of the commonwealth, the presiding judge may, in his discretion, request the [Department of Mental Health] to assign a qualified physician, who, if assigned shall make such examinations as the judge may deem necessary."

power to order a psychiatric examination to assess a witness's credibility when necessary "to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 509-510 (1972), quoting *Crocker* v. *Superior Court,* 208 Mass. 162, 179 (1911). The defendant proposes that we adopt the majority position which authorizes a trial judge to order the complaining witness of a sexual offense to submit to a psychiatric examination when the defendant demonstrates a compelling need. This allegedly arises when little or no corroboration supports the charge and the defendant raises the issue of the effect of the complaining witness's mental or emotional condition upon her veracity.[4] The defendant further suggests that we apply this rule to a witness who merely corroborates the complaining witness's testimony. We decline to adopt this rule in any circumstance.

1. *Applicability of G. L. c. 123, § 19.* Although the defendant concedes that G. L. c. 123, § 19, does not apply to a psychiatric examination ordered for the purpose of assessing a witness's credibility, we should investigate statutory authority before addressing the question of inherent authority. See *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 534 (1982); *O'Coin's, Inc.* v. *Treasurer of the County of Worcester, supra* at 508-509. A judge's inherent authority should be summoned only in the absence of statutory authority. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,* 374 Mass. 640, 646-647 (1978).

General Laws c. 123, § 19, and its predecessor, G. L. c. 123, § 99,[5] have consistently been interpreted as enhancing a trial

---

[4] See, e.g., *State* v. *Wahrlich,* 105 Ariz. 102, 105-106 (1969); *Ballard* v. *Superior Court,* 64 Cal. 2d 159, 176-177 (1966); *State* v. *Gregg,* 226 Kan. 481, 489 (1979); *State* v. *Maestas,* 190 Neb. 312, 314 (1973); *Washington* v. *State,* 96 Nev. 305, 307 (1980); *State* v. *Boisvert,* 119 N.H. 174, 177-178 (1979); *State* v. *Klueber,* 81 S.D. 223, 230 (1965); *Forbes* v. *State,* 559 S.W.2d 318, 320-321 (Tenn. 1977). But see *People* v. *Souvenir,* 83 Misc. 2d 1038, 1040-1042 (N.Y. Crim. Ct. 1975).

[5] Section 99 of the earlier G. L. c. 123 read in pertinent part: "In order to determine the mental condition of any person coming before any court of the commonwealth, the presiding judge may, in his discretion, request the

judge's jurisdiction to determine a party's or a witness's competency to testify at trial. *Commonwealth* v. *Gibbons,* 378 Mass. 766, 767-769 (1979). *Commonwealth* v. *Welcome,* 348 Mass. 68, 69 (1964). This court interpreted G. L. c. 123, § 99, as providing a "simple, efficient and impartial method of determining . . . whether a party to an action [or witness] is capable of conducting the litigation [or of testifying] by reason of minority or mental incapacity." *Sullivan* v. *Superior Court,* 271 Mass. 435, 437 (1930). This interpretation applies with equal force to G. L. c. 123, § 19, inserted by St. 1970, c. 888, § 4, because it is a reenactment of the former G. L. c. 123, § 99, in substantially the same words. *Commonwealth* v. *Welosky,* 276 Mass. 398, 409, cert. denied, 284 U.S. 684 (1931). Therefore G. L. c. 123, § 19, operates as a supplement to a judge's traditional method of assessing competency, e.g., the voir dire. *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 609 (1973).

Neither the language of G. L. c. 123, § 19, nor its legislative history indicates that the statutory authority extends to the ordering of a psychiatric examination for the purpose of assessing a witness's credibility. The determination of a witness's competency rests in the witness's general ability or capacity to observe, remember and recount. *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921). Further, the witness must have "understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment." *Id.* The determination of competency is peculiarly within the province of the judge. *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980). On the other hand, the issue of a witness's credibility focuses on the witness's ability and willingness to tell the truth. "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Com-*

[Department of Mental Health] to assign a member of the medical staff of a state hospital to make such examinations as he may deem necessary."

*monwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978). We conclude that the Legislature's grant of authority to judges to order psychiatric examinations in order to aid in a determination of competency could not apply to the separate and distinct determination of credibility, which rests within the province of the trier of fact, without an explicit expression of legislative intent. See *Town Crier, Inc.* v. *Chief of Police of Weston,* 361 Mass. 682, 686-687 (1972).

2. *Inherent authority.* We must now consider the defendant's claim that a judge has inherent authority to order a psychiatric examination in these circumstances. Therefore, we examine the general common law powers of a judge, *Crocker* v. *Superior Court,* 208 Mass. 162, 166 (1911), and the implicit powers of a judge derived from the constitutional grant of judicial powers, *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 510 (1972).

After examination of all relevant considerations, we conclude that the judge has no inherent authority to order the psychiatric examinations sought in this case.

At common law, a judge had no authority to order a physical examination of a plaintiff in an action for personal injuries. *Stack* v. *New York, N.H. & H.R.R.,* 177 Mass. 155, 157 (1900) (Holmes, C.J.). An examination of this nature would constitute a serious invasion into the person of a party and should not be imposed absent statutory authority. *Id.* See *Union Pac. Ry.* v. *Botsford,* 141 U.S. 250, 257 (1891). A psychiatric examination, like a physical examination, will constitute a serious invasion of a person's psyche and "may seriously impinge on a witness' right to privacy." *Commonwealth* v. *Gibbons,* 378 Mass. 766, 773 (1979), quoting *United States* v. *Benn,* 476 F.2d 1127, 1131 (D.C. Cir. 1972).

A trial judge has authority to order a psychiatric examination to determine competency, a determination within a judge's discretion. *Sullivan* v. *Superior Court,* 271 Mass. 435, 437 (1930). If a judge ordered a psychiatric examination to determine credibility, a determination within the province of the jury, he would intrude upon a vital function of the trier of fact. See *Commonwealth* v. *Francis,* 390 Mass. 89, 100 (1983).

"The defendant would, in effect, have this court substitute the views of a psychiatrist for that of the jury." *People* v. *Souvenir,* 83 Misc. 2d 1038, 1041 (N.Y. Crim. Ct. 1975).

The defendant does not persuade us that a judge has inherent power to order the examinations. We do not, and need not, attempt here to define precisely the limits of inherent power, but we can say in general that the relevant cases have recognized such power in vital areas which in no way encompass the matter urged here. See, e.g., *Beit* v. *Probate & Family Court Dep't,* 385 Mass. 854, 860 (1982) (authority to sanction attorneys for failure to appear for trial); *Department of Pub. Welfare* v. *J.K.B.,* 379 Mass. 1, 6 (1979) (authority to order compensation for court appointed attorneys); *Baird* v. *Attorney Gen.,* 371 Mass. 741, 763 (1977) (authority to appoint counsel to represent indigent minor); *O'Coin's, Inc.* v. *Treasurer of the County of Worcester, supra* at 510 (authority to bind county for necessary expenses); *Bolduc* v. *Commissioner of Correction,* 355 Mass. 765, 767 (1969) (authority to correct errors in court records); *Opinion of the Justices,* 279 Mass. 607, 609-610 (1932) (authority to supervise the practice of law); *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 372-373 (1927) (authority to punish acts tending to obstruct the administration of justice).

A balance of competing interests supports this position. A witness undeniably has a right to fair treatment. *Commonwealth* v. *Rooney,* 365 Mass. 484, 495 (1974). We note again that a psychiatric examination may seriously impinge on a witness's right to privacy. Especially with respect to complainants of sexual offenses, the trauma that attends "the[ir] role . . . is sharply increased by the indignity of a psychiatric examination." *Commonwealth* v. *Gibbons, supra,* quoting *United States* v. *Benn, supra* at 1131. The examination could serve as a tool of harassment. *Id.* The traditional methods for assessing the credibility of a witness are adequate. The defendant has the right to introduce expert testimony dealing with a witness's ability and willingness to tell the truth if he can demonstrate special circumstances, *Commonwealth* v. *Francis, supra* at 101-102. He may cross-examine the complaining witness and

is entitled to jury instructions which sufficiently outline the factors which enter into a determination of a witness's credibility. *Id.* at 101.

Additionally, we believe the adoption of a rule granting a trial judge the authority to order a psychiatric examination in these circumstances, especially when the witness is the complainant in a sexual offense, would contravene the public policy of the Commonwealth which is evidenced in the rape-shield statute. G. L. c. 233, § 21B, inserted by St. 1977, c. 110. This statute was "aimed at eliminating a common defense strategy of trying the complaining witness rather than the defendant. The result of this strategy was harassment and further humiliation of the victim as well as discouraging victims of rape from reporting the crimes to law enforcement authorities." *Commonwealth* v. *Joyce,* 382 Mass. 222, 228 (1981), quoting *State* v. *Williams,* 224 Kan. 468, 470 (1978). A complainant in a sexual offense case would be more reluctant to report a crime if, in addition to the usual stress associated with sexual offense trials, the victim would be "subjected to an invasion of privacy and the necessity of a psychiatric examination." *People* v. *Souvenir, supra* at 1042. This would contradict the legislative intent to have sexual offenses receive the same treatment as other crimes. *Id.* at 1041. See *Commonwealth* v. *Gibbons, supra* at 774 (psychiatric examinations are not more appropriate in rape cases than in other criminal cases).

Finally the majority rule is applied in cases where the complainant's account of a sexual offense is uncorroborated. This rule would in effect impose a corroboration requirement where none exists. *Commonwealth* v. *Bemis,* 242 Mass. 582, 586 (1922) (no corroboration necessary to sustain a rape charge). A psychiatrist would be required to "vouch for the witness' credibility." *People* v. *Souvenir, supra* at 1041.

For these reasons we affirm the judge's denial of the defendant's motion for psychiatric examinations of R and B. The judge does not have the authority to grant such a request for the purpose of assessing a witness's ability to tell the truth.

*Order affirmed.*