COMMONWEALTH *vs.* WILLIAM R. LAMONTAGNE.

No. 95-P-510.

Worcester. May 9, 1996. - February 14, 1997.

Present: PERRETTA, JACOBS, & LENK, JJ.

*Witness,* Child, Competency. *Evidence,* Fresh complaint, Expert opinion. *Practice, Criminal,* Assistance of counsel.

Statement of the law applicable to a judge's determination of a witness's competency to testify. [215-216]

The record of a criminal trial supported the conclusion that the judge did not abuse his discretion in refraining from an inquiry, on his own motion, regarding the competency of a four year old witness. [216-219]

At the trial of indictments for rape and indecent assault and battery of a three-year-old, testimony of two fresh complaint witnesses did not exceed the scope of the victim's testimony; testimony of a third fresh complaint witness that did exceed the details to which the victim testified created no substantial risk of a miscarriage of justice in light of the judge's instructions on fresh complaint evidence. [219-220]

At the trial of indictments for sexual abuse of a child, the Commonwealth's reliance on five fresh complaint witnesses did not create a substantial risk of a miscarriage of justice in light of the judge's clear, emphatic and repeated instructions to the jury not to use fresh complaint testimony as substantive evidence of the crime. [220]

On appeal from criminal convictions, the defendant did not demonstrate that his trial counsel was ineffective or that counsel's trial strategy was manifestly unreasonable. [221]

At the trial of indictments for sexual abuse of a child, error, if any, in the admission in evidence of certain testimony of an expert witness, a pediatrician who was an expert in child abuse, did not create a substantial risk of a miscarriage of justice. [221-222]

INDICTMENTS found and returned in the Superior Court Department on October 12, 1989.

The cases were tried before *Robert V. Mulkern,* J., and a motion for a new trial was heard by *Herbert F. Travers, Jr.,* J.

*Greg T. Schubert* for the defendant.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After a two-day trial, a jury found the defendant guilty of rape of a child and indecent assault and battery on a child under the age of fourteen.[1] The victim, Esther,[2] was three years old at the time of the abuse and four at the time of trial. On appeal, the defendant argues that the trial judge abused his discretion by allowing Esther to testify without first assessing her competency as a witness, that fresh complaint testimony was beyond the scope of the child's testimony and was excessively cumulative, that his trial attorney provided him with ineffective assistance in failing to challenge Esther's competency and the fresh complaint evidence, and that the testimony of a medical expert invaded the province of the jury.[3] We affirm the judgments.

1. *The facts.* There was evidence to show that the defendant and Esther's mother met during the summer of 1988, while they were patients in the psychiatric ward of a hospital. When, in August, the defendant was discharged, he moved into the mother's apartment where she lived with her two children, Esther and Esther's younger brother, Samuel. In late October, the mother required surgery and spent a week in the hospital. Thereafter, she developed a postsurgical infection, and in November, she was again hospitalized for a week. Esther and Samuel were left with the defendant during the mother's hospitalizations.

Esther testified that on one occasion while her mother was in the hospital, she and the defendant were in the bathroom. The defendant touched her "private," which she described as "in front" and "down below," with his fingers and under her clothes. He also touched her "private," with his fingers and under her clothes "in back," "down below," and "inside" her bottom. When asked whether each of these touchings "hurt," Esther said "Yeah." Esther also testified that the defendant put his "private" in her mouth and that when he did, "pee" came out. This incident also took place in the bathroom.

By the time of the mother's return home from the hospital in November, Esther's behavior had become terrible. As

[1]The trial judge allowed the defendant's motion for a required finding of not guilty on an indictment charging unnatural sexual intercourse, and the jury returned a not guilty verdict on a second indictment charging rape of a child under the age of fourteen.

[2]The name of the victim and that of her brother are pseudonyms.

[3]Appellate counsel did not represent the defendant at trial.

described by the mother, Esther was having temper tantrums, refusing to go to bed at night, taking off all her clothes and climbing into Samuel's crib, and urinating and defecating on her bedroom floor. She had become withdrawn and no longer exhibited her usual energy and zest for play.[4]

In late December of that year, 1988, the defendant and the mother separated, and a new roommate, Donna Dunbar, moved into the apartment. Dunbar related that one night in late March, she asked Esther, who appeared particularly upset and withdrawn, what was wrong. Esther replied, "The monster is after me." When Dunbar asked who the monster was, Esther said, "Bill." Dunbar next asked Esther what she meant by saying Bill was a monster, and Esther explained that Bill would lie on top of her. Esther also told Dunbar that Bill "touched her privates" and that after bathing her, he would put his fingers "up inside to dry her off." Dunbar informed the mother about Esther's statements.

After talking with Esther, the mother brought her to a counseling center for an interview with a licensed social worker. After that interview, the social worker reported the matter to the Department of Social Services (department). A social worker for the department then conducted an interview of Esther while her mother and a detective with the local police department watched behind a two-way mirror. Using anatomically correct dolls, Esther showed the social worker what had happened while her mother had been in the hospital.

When questioned by the police, the defendant stated that he had bathed Esther and Samuel while the mother was in the hospital. He explained that when he would dry Esther off after her bath or clean her after she went to the bathroom, he would wrap his fingers in either a towel or tissue and wipe the inside of her vagina and anus.

A pediatrician specializing in child abuse testified that upon her examination of Esther, she found "some redness of the hymenal membrane . . . [which] could be consistent with some type of manipulation in that area."

2. *Esther's competency to testify.* "The basic rule under

[4]There was also evidence to show that the mother had accused Esther's father of abusing her in the late winter or early spring of 1988. She reported that after Esther returned home from a visit with him, her vagina appeared raw and chafed, she was trying to insert objects into her vagina, and she became withdrawn.

G. L. c. 233, § 20, as appearing in St. 1983, c. 145, is that any person of 'sufficient understanding' is qualified as a witness. 'While age is of importance, it is not the test.' *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921)." *Commonwealth* v. *Gamache,* 35 Mass. App. Ct. 805, 806 (1994). Because questions concerning a witness's competency must be resolved before the witness testifies, see *Commonwealth* v. *Brusgulis,* 398 Mass. 325, 331 (1986), it follows that " 'objections to the competency of a witness if known must be made before the testimony is given.' " *Commonwealth* v. *Whitehead,* 379 Mass. 640, 655 n.16 (1980), quoting from *Commonwealth* v. *Domanski,* 332 Mass. 66, 73-74 (1954).

An objection, or a request for a hearing, requires the trial judge to conduct a voir dire examination of the witness to determine his or her competency by application of the well established two-prong test repeated in *Brusgulis, supra* at 329: "(1) whether the witness has the general ability or capacity to 'observe, remember, and give expression to that which she ha[s] seen, heard, or experienced'; and (2) whether she has 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.' *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921). See also *Commonwealth* v. *Widrick,* 392 Mass. 884, 888 (1984); *Commonwealth* v. *Gibbons,* 378 Mass. 766, 770 (1979); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70 (1964)." It is also well established that "[w]hether the test is met is 'peculiarly for the trial judge, and his determination will be rarely faulted on appellate review.' *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980)." *Commonwealth* v. *Gamache,* 35 Mass. App. Ct. at 806. Even when a witness is determined to be competent and allowed to testify, it remains open to the trial judge to "reconsider his decision, either sua sponte or on motion, if he entertains doubts about the correctness of the earlier ruling." *Commonwealth* v. *Brusgulis,* 398 Mass. at 331.

When the Commonwealth presented the four year old witness in the present case, defense counsel lodged no objection before or during her testimony. He made no motion to strike Esther's testimony either before or after his cross-examination of her. In short, he never put Esther's competency to testify

in issue. The argument on appeal is that after hearing Esther's testimony on cross-examination, the trial judge should have made inquiry, sua sponte, as to her competency.[5] Although as matter of law a trial judge is not mandated to conduct a voir dire on competency in the absence of an objection, there is nothing to prevent him from doing so sua sponte as matter of discretion where doubt as to competency exists upon seeing and hearing the witness testify. See *Kentucky* v. *Stincer*, 482 U.S. 730, 742-743 (1987); *Commonwealth* v. *Whitehead*, 379 Mass. at 656, citing to *Commonwealth* v. *Welcome*, 348 Mass. 68, 69 (1964).

When Esther was called to testify, she gave her full name and age as well as the names of her mother and brother, whom she correctly described as "younger." Because she attended "day care," she disputed that she did not go to school. Esther also testified that she was going to tell the truth, that telling lies is bad, and that when you tell a lie, "you get punished." See *Commonwealth* v. *Brusgulis*, 398 Mass. at 331, where on comparable responses the court stated that the three and one-half year old "witness knew she was supposed to tell the truth and understood that undesirable consequences flowed from telling a lie."

Although many leading questions were put to Esther on direct examination, the defendant made no objection. On appeal, he argues that Esther's answers were "eventual responses to aggressive, repeated leading questions." We see nothing in the record which supports the defendant's present posi-

---

[5]The defendant also urges us to adopt a presumption of incompetence and to mandate voir dire competency determinations of all witnesses under the age of seven. He suggests that we hold that until age seven, a child is incapable of judging right from wrong and cannot appreciate the wrongfulness or meaning of perjury and that the trial judge must conduct the voir dire without participation or interference from the prosecutor and without the use of leading questions. The short answer to the defendant's suggestion is that it contradicts the express language of G. L. c. 233, § 20, the construction consistently given that provision from the time of its enactment to the present, and the trend in this as well as other jurisdictions which allows young children to testify subject to impeachment of their credibility. See *Commonwealth* v. *Brusgulis*, 398 Mass. at 329; *Commonwealth* v. *Corbett*, 26 Mass. App. Ct. 773, 776 n.3 (1989); *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. at 806-809, and authorities therein cited.

tion.[6] Even if objections had been taken, they properly could have been overruled. See *Commonwealth* v. *Baran*, 21 Mass. App. Ct. 989, 991 (1986), quoting from *Moody* v. *Rowell*, 17 Pick. 490, 498 (1835) ("The Court have no doubt, that it is within the discretion of a judge at the trial, under particular circumstances, to permit a leading question to be put to one's own witness, as . . . where the witness is a child of tender years, whose attention can be called to the matter required, only by a pointed or leading question").

There were inconsistencies in Esther's answers, but they were neither so frequent nor so severe as to show that her testimony in its entirety was beyond reasonable belief by a rational person. See *Commonwealth* v. *Whitehead*, 379 Mass. at 655-657. Compare *Commonwealth* v. *Corbett*, 26 Mass. App. Ct. 773, 777 (1989). In addition to the fact that we see nothing in Esther's testimony as a whole which should have caused the trial judge to depart from the general rule, that "inconsistency is usually not a question of competency but rather a question of credibility, a matter left to the trier of fact except in very rare cases," *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. at 809, we take into account the fact that the trial judge had the opportunity to observe the child while she was testifying. See *Commonwealth* v. *Whitehead*, 379 Mass. at 656; *Commonwealth* v. *Corbett*, 26 Mass. App. Ct. at 777, and cases therein cited.

Our review of the entire record leads us to conclude that the trial judge did not abuse his discretion in refraining from a sua sponte inquiry into Esther's competency to testify. See

---

[6]In his brief, the defendant argues that Esther "never denied that someone told her what to say; she just did not know who it was." On cross-examination, Esther was asked several times whether "anybody" ever told her "to say these things." Esther replied to each such question that she did not know. When asked, "Did anybody say to you . . . that you should say when people ask you . . . that Bill put his finger inside of you," Esther replied, "Yeah." When asked who told her to say that, she again said that she did not know. We think, however, that this exchange could be found to be more an indication of appropriate trial preparation of the child rather than a persuasive showing that Esther had been coerced or coached to lie. Cf. *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 460-463 (1996), concluding that even were Massachusetts to adopt the test set out in *State* v. *Michaels*, 136 N.J. 299 (1994), for determining whether a child's testimony had been tainted by coercive and leading pretrial interrogation, there was nothing in the record to support a conclusion that the child's answers were the product of coercion.

*Kentucky* v. *Stincer*, 482 U.S. at 743 ("appellate courts reviewing a trial judge's determination of competency also often will look at the full testimony at trial"). The controlling two-prong test was met and the jury received comprehensive instructions on all the applicable factors to be considered in making determinations of credibility. There was no error.

3. *Fresh complaint evidence.* Following Esther's testimony, the Commonwealth called five fresh complaint witnesses: Esther's mother, the mother's friend and roommate, two social workers, and a police detective. The defendant argues that the testimony of three of these witnesses went beyond that given by Esther. As earlier recited, Esther testified that the defendant put his finger in her vagina and anus and his "private" in her mouth. The mother's friend related that Esther told her that the defendant would lie on top of her. One of the social workers described how Esther directed the anatomically correct male doll to "lay on top of the little girl doll" and then "spank her behind," "punch her in the stomach," and "lightly touch the little girl's vagina."

"A fresh complaint witness may testify to the details of acts discussed during a fresh complaint; the acts about which the witness testifies, however, must have been testified to by the complainant. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). In other words, fresh complaint testimony is limited in scope to the events raised during the testimony of the complainant; it is not limited, however, as to the details of those events." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994). We do not think that the testimony of the mother's friend and a social worker constituted more than additional details of the events related by Esther.

The testimony of the second social worker did, however, go beyond the scope of Esther's testimony. This social worker testified that Esther told her that the defendant touched himself on his "wee-wee . . . sixteen" times. Because the defendant made no objection, the error must rise to the level of a substantial risk of a miscarriage of justice. On the basis of the trial judge's instructions that fresh complaint testimony was not substantive evidence as well as the jury's disbelief of one

of the child's accusations, see note 1, *supra,* we conclude that no such risk exists on account of that evidence.[7]

There is an additional claim by the defendant on this issue. He argues that the Commonwealth's reliance on five fresh complaint witnesses created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Lavalley,* 410 Mass. 641, 646 (1991) ("The overuse or 'piling on' of evidence regarding the details of several fresh complaints may create the risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred"). Although an excessive use of fresh complaint witnesses can result in a legitimate risk of undue prejudice, that risk is alleviated where the trial judge clearly, emphatically, and repeatedly instructs the jury not to use fresh complaint testimony as substantive evidence of the crime. See *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 761 (1995). Prior to the admission of fresh complaint testimony in the instant case, the trial judge instructed that "it is not substantive evidence that anything happened to Esther." He repeated this limiting instruction by referring to it ·before each of the remaining four witnesses testified. Further, in his final instructions to the jury, the trial judge reiterated that the fresh complaint testimony could not be used as substantive evidence of the allegations and that its purpose was merely to corroborate Esther's testimony. See *Commonwealth* v. *Licata,* 412 Mass. 654, 660 (1992), decided after the trial in the instant case, in which it was held that a trial judge "should instruct the jury as the evidence is admitted and again during the jury instructions that fresh complaint testimony. does not serve as substantive evidence that the crime in fact occurred." Although the trial judge, in 1989, did not define the term "corroboration" for the jury as required by *Commonwealth* v. *Scanlon,* 412 Mass. at 674, we are satisfied that his clear and emphatic instructions, that fresh complaint testimony could not be used as evidence that a crime had occurred, were quite sufficient to remind the jurors of the limited purposes of such testimony. See *Commonwealth* v. *Licata,* 412 Mass. at 660. See also *Commonwealth* v. *Shiek, ante* 209 (1997).

---

[7]Given the limited period in which the defendant was alone with the child, as shown by the evidence, the absence of an objection reasonably could be attributed to a tactical decision that the testimony made the child less credible, as discussed in part 4, *infra.*

4. *Ineffective assistance of counsel.* Trial counsel is alleged to have rendered ineffective assistance to the defendant on the bases that he did not challenge Esther's competency as a witness and that he did not object to the nature and degree of the fresh complaint testimony. Because Esther's testimony demonstrates that she was competent to testify, any omission on the part of trial counsel to challenge her did not deny the defendant of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974); *Breese* v. *Commonwealth,* 415 Mass. 249, 252 (1993). And although a failure to object to fresh complaint evidence which exceeds the scope of the victim's testimony can constitute ineffective assistance, see *Commonwealth* v. *Sugrue,* 34 Mass. App. Ct. 172, 173-175 (1993), such a conclusion cannot be reached where the lack of an objection can be attributed to a reasonable tactical decision. See *Commonwealth* v. *White,* 409 Mass. 266, 273 (1991), quoting from *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

We conclude that trial counsel made a strategic choice in not challenging Esther's competency or making objection about the scope and extent of the fresh complaint testimony. His cross-examination of Esther showed inconsistencies between her answers on direct and cross-examination. Cf. *Commonwealth* v. *Whitehead,* 379 Mass. at 658 (where counsel made a reasonable "tactical choice to give the witness her head and then try to break her down"). He took appropriate steps to make certain that the jury were aware of the nature of fresh complaint evidence before each of the fresh complaint witnesses testified. Trial counsel also brought out the fact of the mother's prior accusation of abuse of Esther by her father. During his summation, he marshaled the inconsistencies between Esther's testimony at trial and her statements to witnesses, he brought out the fact that Esther had been subjected to numerous interviews and examinations, and he argued that the testimony of an impressionable child should not be found to be proof beyond a reasonable doubt. Although unsuccessful, trial counsel's strategy was not manifestly unreasonable. See *Commonwealth* v. *White,* 409 Mass. at 272.

5. *Testimony of the expert.* On cross-examination, the Commonwealth's expert witness, a pediatrician and an expert in child abuse, was asked whether redness in the vagina would

occur if a child masturbated with toys. The witness responded that it would and went on to add that "it's very unusual for children to stick toys into themselves until someone else has stuck something into them." The witness further agreed with counsel that redness "in and of itself" does not indicate that there was sexual abuse.

Trial counsel did not move to strike these answers as non-responsive or beyond the scope of the question. Now, relying upon *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 (1994), where this same witness impermissibly testified that in her opinion the children in that case in fact had been sexually abused, the defendant argues that the answers in dispute were "tantamount to an expert opinion that the .. . . [child's] claims of sexual abuse were true."

We think it unnecessary to determine whether the expert's responses to the questions were in fact the equivalent of a vouching for Esther's credibility because any error would not require reversal of the defendant's convictions. In addition to the fresh complaint evidence, the defendant admitted to the police that he had inserted his fingers into Esther's vagina and anus, albeit for a purpose he claimed to be innocent. Further, the expert agreed with trial counsel that vaginal redness did not, "in and of itself," indicate sexual abuse. We conclude that any error in the expert's responses did not create a substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Trowbridge*, 419 Mass. at 759-760; *Commonwealth* v. *Perkins*, 39 Mass. App. Ct. 577, 582-585 (1995).

*Judgments affirmed.*