COMMONWEALTH vs. JOSE SANCHEZ.

Middlesex. April 1, 1996. - September 24, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Voir dire, Examination of jurors, Confrontation of witnesses, Assistance of counsel, Instructions to jury, Verdict, Record. *Child Abuse. Witness,* Child. *Constitutional Law,* Confrontation of witnesses. *Due Process of Law,* Presumption.

At the trial of three indictments for sexual abuse of a child, conducted before this court's decision in *Commonwealth* v. *Flebotte,* 417 Mass. 348, 355 (1994), the judge did not abuse his discretion in declining to question the venire individually where nothing in the record demonstrated that the judge had concluded that there was a substantial risk that those jurors would be other than objective and impartial. [594-595]

At the trial of indictments for sexual abuse of a child the judge's modification of the seating arrangement to place the alleged victim and counsel, for examination and cross-examination, at a table some twenty feet from where the defendant was sitting did not impair the defendant's right to confront that witness, where there was no claim that the defendant did not have face to face contact during the witness's testimony [596-597]; nor did the record support the defendant's claim that the arrangement violated his right to counsel by precluding access to his attorney during questioning [597-598]; and further, the seating arrangement did not create an inference of guilt [598].

At the trial of three identical indictments for rape and abuse of a child at "diverse times" between January 1, 1987, and August 31, 1991, in which the victim did not identify discrete instances when particular acts took place, there was no significant likelihood that the convictions on the three indictments would result from some jurors being satisfied that one or more events had occurred and other jurors finding the defendant guilty on the basis of different events: the defendant was not entitled in the circumstances to a "specific unanimity" instruction, and defense counsel's withdrawal of a request for such an instruction did not constitute ineffective assistance of counsel. [598-600]

There was no error in a single justice's denial without a hearing of a criminal defendant's motion to expand the record while the direct appeal from conviction was pending. [600-601]

INDICTMENTS found and returned in the Superior Court Department on May 19, 1992.

The cases were tried before *Charles J. Hely,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Karen Morth,* of New York, for the defendant.

*Judith B. Stephenson,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was convicted on three identical indictments charging that at "[d]iverse times" between January 1, 1987, and August 31, 1991, he had "natural or unnatural sexual intercourse with . . . a child under the age of sixteen and did abuse said child." See G. L. c. 265, § 23 (1994 ed.). The defendant appealed, and we granted his application for direct appellate review. While his appeal was pending here, the defendant moved to expand the record. A single justice of this court denied the motion without a hearing, and the defendant appealed from that order. The appeals are consolidated.

The issues on appeal are these: (1) did the judge err when he denied the defendant's motion for individual voir dire to determine whether prospective jurors had had personal experience with child sexual abuse which might affect their impartiality; (2) did the judge err in modifying the usual courtroom seating arrangement to accommodate the alleged victim while she testified; (3A) did the judge's failure to instruct the jury on the necessity for "specific unanimity" constitute reversible error; (3B) did defense counsel's withdrawal of her request for such an instruction constitute ineffective assistance of counsel; and (4) did the single justice err in denying the defendant's motion to expand the record on appeal?

We summarize the trial evidence as follows: Hortensia Rosario (mother) and the defendant lived together for several years. They produced three children. The mother had three other children, one of whom was the victim whom we shall call "Alicia." Rosario's brother, Victor, lived "on and off" with the family. The family lived mostly in Lowell, although for a short period while Alicia was five and six years old the family lived in California. For a brief time, Alicia remained with her grandmother in California after the rest of the family returned to Lowell. Alicia then rejoined the family. She testified that "sometimes [the defendant] would bring [her] down to the basement and put his penis in [her] vagina."

When asked how many times that happened, Alicia answered, "A lot." Alicia testified also that the defendant put his penis in her mouth more than once; it happened in Lowell and in California. There was no other evidence concerning the dates of such offenses or the number of times they occurred. Also, there was no other evidence of circumstances or details that would distinguish one asserted criminal event from another.

There was evidence that the defendant and the mother used "crack" cocaine and marihuana and that they sold their furniture as well as food and clothes, originally intended for the children, in order to buy drugs. The house was dirty, according to the evidence, and infested with vermin, and the children had no clean clothes to wear to school and did not attend school regularly. The defendant testified that he physically abused the children, including Alicia, while using drugs. In addition, there was evidence that Victor sexually abused Alicia. The Department of Social Services (DSS) warned the defendant and the mother that, if they did not stop using drugs and did not start caring for their children properly, they would lose the children. They did not heed the warning and DSS removed the children from the home and placed them in foster care. Much of this evidence bore on the defense theory that Alicia was fabricating accounts of sexual abuse so she would not have to return to her home. The defendant testified that the rapes of which he was accused never happened.

The defendant filed a motion to examine prospective jurors, G. L. c. 234, § 28 (1994 ed.), to reveal whether any of them had had personal experience with child sexual abuse that might affect their impartiality. The judge denied the motion and, instead, put the following questions to the venire as a whole and asked them to raise their hands to indicate an affirmative answer:

> "Do you have any experience in your immediate family with sexual assault that would interfere with your ability to listen to the evidence in a calm and fair way and an unemotional way and decide this case based solely on the evidence? Any experience in your immediate family life with sexual assault, either someone involved and accused of committing an assault, or someone charged with it, or someone having committed an

assault, or perhaps you, yourself, or some close family member have experienced a sexual assault as a victim. Do you have any such experience, you or your family, that would interfere, or in any way interfere with your ability to listen to the evidence in this case and decide the evidence in this case in a calm and fair and unemotional way?"

The defendant contends that the judge erred in denying his request for individual voir dire.

General Laws c. 234, § 28, provides in relevant part that

"[f]or the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case . . ., the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination . . . shall be conducted individually . . . ."

In *Commonwealth* v. *Flebotte*, 417 Mass. 348, 355 (1994), we observed that "[i]t is generally within the judge's discretion to determine when there exists a substantial risk that extraneous issues would influence the jury such that an individual voir dire of potential jurors is warranted." Nevertheless, in *Flebotte*, invoking our general superintendence powers, we "require[d] trial judges on request in future cases [involving sexual offenses against minors] to question each potential juror individually as to whether the juror had been a victim of a childhood sexual offense." *Id.* at 355. We reasoned that "adult victims of childhood sexual offenses may be reluctant to come forward from a venire and discuss such a private and highly emotional event with a judge; they may be embarrassed about it, they may feel it would not affect their objectivity, or they may just not want to discuss it." *Id.*

The present case was tried before our decision in *Flebotte*. Therefore, pursuant to our announcement in that case that the new rule would apply only to "cases tried hereafter," *id.*

at 353, the rule does not apply here. The question before us, then, is whether, in the proper exercise of his discretion, the judge determined that there was "a substantial risk that extraneous issues would influence the jury," *id.* at 355, as the defendant contends he did. If the judge made that determination, he was required by c. 234, § 28, to examine the jurors individually.

The defendant argues that the judge "acknowledg[ed] a risk of extraneous influence" but then failed to obey the dictates of c. 234. § 28, by inquiring of the venire as a whole rather than individually as the statute requires. The defendant points to the judge's following statements:

> "My experience has been that jurors do respond — questions about sexual assault experience, jurors do respond if they understand the question, or given the time to respond. Generally speaking, in jury pools, I often have six or eight people respond, out of fifty. Sometimes two or three. Sometimes none. I think it varies greatly with the jury pool and the individual's experience. But my experience with jury pools of around fifty people, it's been not uncommon to have . . . some family experience or personal experience with sexual assault. So I'm not going beyond that, but I will carefully attend to those issues without individual voir dires as carefully as I can, and the questions as I indicated."

Nothing in the judge's remarks, relied on by the defendant, demonstrates that the judge determined (or "acknowledged") that such a risk was present. Although it is clear that the judge recognized from his experience that potential jurors often bring with them to the courtroom personal or family sexual assault experiences, nothing in his remarks demonstrates that he also concluded that there was a substantial risk that those jurors would be other than objective and impartial. Therefore, he was not required by G. L. c. 234, § 28, to examine the jurors individually.

We turn now to the next issue on appeal, which is whether the judge erred in modifying the usual jury trial seating arrangement, over the defendant's objection, in order to accommodate the alleged victim, then ten years old, while she testified. The judge said that he was "making available to the child witness a table to sit at while she testifies, rather than

sitting or standing at the elevated witness stand. I propose, if it works out satisfactorily to the witness, to have the witness sit at a table and have counsel sit at the same table, in front of the jury box, while she testifies . . . [and counsel will] ask their questions while seated at the table and the defendant will remain at counsel table, which is about twenty feet away from where the witness and the attorneys will be seated." The judge carried out his "proposal."

As long as a defendant's constitutional rights are safeguarded, "[a] judge is afforded wide discretion in fashioning procedures and modifying standard trial practices to accommodate the special needs of child witnesses." *Commonwealth* v. *Amirault*, 404 Mass. 221, 243 (1989). See *Commonwealth* v. *Johnson*, 417 Mass. 498, 504 (1994) (judge may modify certain procedures "which are consistent with the constitutional rights of the accused and also decrease the stress and trauma that a child witness may suffer"). The defendant argues, however, that the modified seating arrangement in this case was impermissible because it resulted in a violation of his rights of confrontation and counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, and because it conveyed to the jury an impermissible inference of the defendant's guilt.

The defendant maintains that his right of confrontation was abridged because the jury's observation of his interaction with Alicia during her testimony was impaired due to Alicia and the attorneys sitting at a table in front of the jury box while the defendant sat twenty feet away from them at counsel's table.

The defendant's right of confrontation requires the physical presence of a witness testifying against him, the witness's testimony to be under oath, the defendant's opportunity to cross examine the witness, and the jury's opportunity to observe the witness's demeanor. *Maryland* v. *Craig*, 497 U.S. 836, 846 (1990). *Commonwealth* v. *Kater*, 409 Mass. 433, 446 (1991), *S.C.*, 412 Mass. 800 (1992), and 421 Mass. 17 (1995). *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 543 (1988). These "elements of confrontation" serve, in part, to enable the jury to evaluate the witness's credibility. *Maryland* v. *Craig, supra* at 846. "Absent compelling circumstances, a jury ought to be able to view the interaction between a wit-

ness and others who are present. The subtle nuances of eye contact, expressions, and gestures between a witness and others in the room are for the jury to evaluate. . . . Especially where child witnesses are involved, and great leeway for leading questions is allowed, jurors must be able to choose their own focus in looking for any direct or indirect influences on a child's testimony." *Bergstrom, supra* at 550.

The defendant does not claim that the jury were foreclosed from choosing their own focus in looking for the possible influence of others in the courtroom on Alicia's testimony. He does not suggest that the jury's view of the interaction between Alicia and the defendant was obstructed. Instead, the defendant argues only that "[w]ith the defendant at such a remove from counsel, the witness's attention would not naturally be focused in the general direction of the defendant during cross-examination to the same extent as is the case when counsel and the defendant are sitting side by side." This contention lacks merit. Nothing in the Federal or State Constitution or in our case law suggests that a defendant in a criminal case is entitled to be positioned in reference to a child or other witness so as to emphasize or maximize the witness's attention or reaction to the defendant. Here, unlike the situation in *Commonwealth v. Johnson, supra,* the record does not show and the defendant does not claim an absence of face to face contact between the witness and the defendant.

We also reject the defendant's argument that the seating arrangement violated his right to counsel because it "effectively precluded access to counsel by the defendant" during Alicia's testimony. The record simply does not support the defendant's assertion that "it was not possible for him to confer with his counsel during the testimony of the complaining witness." For all that appears, the defendant had as much access to his attorney while Alicia was testifying as he would have had if, as occurs in the usual course, his attorney had been cross-examining her while standing away from counsel's table or moving about the courtroom. See *Commonwealth v. Drew,* 397 Mass. 65, 80-81 (1986) (no deprivation of right to counsel where "defendant was seated in a chair at the rear of the bar railing, approximately twelve feet from defense counsel table"); *Commonwealth v. Campbell,* 378 Mass. 680, 698 (1979) (defendant not deprived of right to counsel where he did not demonstrate that "communication at any particu-

lar juncture was both impossible and essential to securing a fair trial").

The defendant's third claim relative to the seating arrangement is that it created an impermissible inference of guilt. He asserts that the seating arrangement "likely conveyed to the jury that the witness had been harmed by the defendant or needed protection from the defendant." Due process mandates that the State, absent a substantial government interest, may not "create trial conditions that affect the jurors' perception of the defendant" in a way that erodes the presumption of innocence. *Estelle* v. *Williams,* 425 U.S. 501, 503 (1976). *Commonwealth* v. *Angiulo,* 415 Mass. 502, 527 (1993). "When a courtroom arrangement is challenged as inherently prejudicial, the first question is whether 'an unacceptable risk is presented of impermissible factors coming into play,' which might erode the presumption of innocence." *Coy* v. *Iowa,* 487 U.S. 1012, 1034 (1988) (Blackmun, J., dissenting), quoting *Estelle* v. *Williams, supra* at 505. In this case, the seating arrangement did not create an inference of guilt. Placement of Alicia at a table with counsel, while they asked her questions and she answered them, was obviously designed to promote her comfort and enhance her ability to respond, but suggested nothing negative about the defendant. Indeed, as a result of the special arrangements, Alicia was physically closer to the defendant than she would have been if she had testified from the witness stand. The seating arrangement did not suggest that the defendant was dangerous or had harmed Alicia. The defendant's argument is without merit.

The next issues for discussion relate to the absence of a jury instruction that, in order to convict the defendant, it was necessary that the jury achieve "specific unanimity." As we have stated at the outset of this opinion, the defendant was charged in three identical indictments with committing natural or unnatural sexual intercourse with a child under the age of sixteen at "diverse times" between January 1, 1987, and August 31, 1991. In a case in which the indictment alleges in statutory terms a criminal offense occurring during a period of several months and, at trial, there is evidence that the defendant committed several such offenses within that period, describing them and the circumstances in which they occurred separately and in some detail, a specific unanimity instruction informs the jury that, for a conviction, the jury

"must be unanimous as to which specific act constitutes the offense charged." *Commonwealth* v. *Conefrey,* 420 Mass. 508, 512 (1995), quoting *Commonwealth* v. *Keevan,* 400 Mass. 557, 566-567 (1987).

In *Commonwealth* v. *Conefrey, supra* at 514, we said that in a case in which the defendant has requested a specific unanimity instruction *"and where there is a significant likelihood* that [a] conviction [would result] from different jurors concluding that the defendant committed different acts, the judge should give the requested specific unanimity instruction" (emphasis added). We reasoned in *Conefrey* that, because the judge in that case did not give such an instruction, "we [could not] know whether the jurors unanimously agreed that any particular incident occurred." For that reason, we reversed the conviction. *Id.* at 516.

In *Commonwealth* v. *Kirkpatrick, ante* 436, 437 (1996), decided August 7, 1996, the defendant had been convicted on an indictment charging ten identical counts of forcible rape of a child under sixteen years of age, in violation of G. L. c. 265, § 22A (1994 ed.), and on a second indictment charging ten identical counts of indecent assault and battery on a child under fourteen years in violation of G. L. c. 265, § 13B (1994 ed.). A principal issue on appeal was whether the defendant's "constitutional rights to due process of law were violated because the prosecutor was unable, in the indictment, a bill of particulars, or through the victim's testimony, to provide any specific dates or other identifying characteristics for the multiple criminal acts which the defendant was alleged to have committed over a span of two years" (footnote omitted). In *Kirkpatrick,* we concluded that "the defendant's rights were not violated, and that his motions for a required finding of not guilty and to dismiss the indictments properly were denied." *Id.* at 437.

The child victim in *Kirkpatrick* testified that, approximately three times a week during the two-year period in which the defendant was alleged to have committed multiple criminal acts against the child, the defendant would do one or more of several described sexual acts meeting the definition of rape and indecent assault and battery. *Id.* at 437-438. However, "[t]he victim did not identify discrete instances when particular acts took place, much less supply a list of dates and times. She provided reasonably detailed descriptions of various dis-

tinguishable forms of abuse but otherwise spoke largely in generalities. Her testimony, if believed, established that she had been the victim of a large number of criminal acts by the defendant, but it provided little basis for the prosecution to identify particular acts of abuse on which to focus its prosecution." *Id.* at 443. We concluded that, in a case of that kind, "a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it. Because, in a case of this kind, a jury are not offered a choice between discrete incidents of abuse to support a single charge, the risk of a lack of unanimity that we identified in the *Conefrey* case does not exist." *Kirkpatrick, supra* at 442.

Here, too, as in *Kirkpatrick,* and unlike the situation presented in *Conefrey,* the victim, Alicia, did not identify discrete instances when particular acts took place. She spoke largely in generalities. The critical issue for the jury was whether to believe her testimony that the defendant had raped her repeatedly. As in *Kirkpatrick,* there was no significant likelihood in this case that convictions on the three identical indictments would result from some jurors being satisfied that one or more specific events occurred and other jurors finding the defendant guilty on the basis of different events. The defendant, then, was not entitled to a "specific unanimity" instruction. The judge did not err in that regard, and defense counsel's withdrawal of her request for such an instruction was not ineffective assistance of counsel.

While his direct appeal was pending, the defendant moved this court for leave to expand the record, pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979). A single justice of this court denied the motion without a hearing. The defendant asserts that the single justice erred. We disagree.

The defendant desired to include in the record for his appeal affidavits from his trial counsel and the trial court reporter. The two affidavits stated that during Alicia's testimony, the defendant would have been facing his counsel's back. He claims, without explanation, that this fact was essential to his argument on appeal that the modified courtroom

seating arrangement created an inference of guilt and affected his right to counsel. There was no error.

*Judgments affirmed.*

*Order of the single justice affirmed.*