COMMONWEALTH vs. CEFERINO MONZON.

No. 98-P-851.

Suffolk. December 9, 1999. - April 4, 2001.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Child Abuse. Witness,* Competency. *Practice, Criminal,* Sentence, Assistance of counsel, Argument by prosecutor.

At the trial of indictments alleging that the defendant sexually abused his young daughters, age five and six at the time of trial, the judge's questioning of the children and their trial testimony demonstrated their capacity to observe and remember, and to relate what they saw, heard or experienced [249-250], and with respect to the five-year-old, that she understood the difference between the truth and a lie, as well as her obligation to tell the truth [250]; however, with respect to the six-year-old, there was no basis for a conclusion that she was competent to testify, where she twice stated she did not know the difference between the truth and a lie: the defendant was entitled to a new trial on the indictments naming that child as a victim [250-253].

At the trial of indictments, the prosecutor's closing argument was a fair response to defense counsel's argument, and nothing therein constituted reversible error. [253-254]

At the trial of indictments, the defendant did not demonstrate ineffective assistance of his counsel by reason of counsel's failure to object to the judge's giving to the jury a specific unanimity instruction that was not erroneous or prejudicial. [254-255]

Where the judge at a criminal trial may have improperly considered the defendant's alleged perjury in imposing sentence on the defendant, the defendant was entitled to be sentenced anew. [255-256]

INDICTMENTS found and returned in the Superior Court Department on November 7, 1994, July 26, 1996, and July 30, 1996, respectively.

The cases were tried before *Thomas E. Connolly,* J.

*Paul M. Koziell* for the defendant.

*Jennifer M. Davis,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of a series of indict-

ments charging him with various sexual assaults on his three young daughters.[1] The indictments included the following: (1) three counts of rape of Eliza, a child under the age of sixteen, and four counts of indecent assault and battery on Eliza, a child under the age of fourteen; (2) two counts of indecent assault and battery on Pamela, a child under the age of fourteen; (3) two counts of rape of Carol, a child under the age of sixteen, and two counts of indecent assault and battery on Carol, a child under the age of fourteen.

A Superior Court judge allowed the Commonwealth's motion to join all the indictments. After a jury trial, the defendant was found guilty on all the indictments except for one count charging him with indecent assault and battery on Pamela.

On appeal, the defendant claims that the judge's ruling that Carol and Pamela were competent to testify constituted reversible error. He also contends that certain remarks made by the prosecutor in his closing argument were erroneous. Finally, he claims that he was denied the effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

We summarize the evidence presented by the Commonwealth at trial. Eliza was born on February 15, 1984, in Houston, Texas. When she was three or four years old, the family moved to East Boston, and she lived there with her mother, the defendant, and her grandmother. Eliza shared a bedroom with her parents but had her own bed in that room.

Shortly after the family moved to East Boston, the defendant began touching and rubbing Eliza's chest and vagina with his hands. On one occasion, when Eliza was four or five years old, she complained to her grandmother that her vagina hurt. The grandmother checked Eliza's vagina and found a penny. Eliza then told her grandmother that the defendant had been touching her. The grandmother recorded that conversation and left the tape with the Department of Social Services (DSS), but no investigation was initiated at that time. The grandmother also told Eliza's mother about the sexual abuse, but the mother did

---

[1] We use pseudonyms for the children.

nothing to stop it. Shortly after Eliza told her grandmother that the defendant had been touching her, Eliza and her parents moved out of her grandmother's house. During the next few years, the family moved to various residences. The defendant continued to touch Eliza's chest and vagina throughout this time period. When Eliza was nine years old, the defendant began having intercourse with her. Those episodes included penetration of Eliza's vagina with the defendant's fingers and tongue.

After the defendant began having intercourse with Eliza, a son and two daughters, Carol and Pamela, were born to him and his wife. Carol was born on February 26, 1990, and Pamela was born on May 29, 1991.

During the same time period that the defendant was having intercourse with Eliza, he began molesting Carol and Pamela. He touched Carol's vagina with his hands and his mouth, and he put his hands and his tongue in Carol's vagina. The defendant touched Pamela's vagina with his hands and his mouth.

On July 27, 1993, the defendant went to the East Boston Health Center (health center) complaining of "body rash." The physician who examined him observed "small crusts" on the defendant's penis and made a diagnosis that the defendant had genital herpes.

In May of 1994, Carol and Pamela complained that their vaginas hurt, and as a result, the mother checked Eliza's vagina and noticed "little white balls inside." The mother took the girls to the health center, where Eliza was diagnosed with genital herpes. Eliza told her mother that her father had been touching her. Even after Eliza was diagnosed with genital herpes, the defendant continued to have sexual intercourse with her.

The health center filed a G. L. c. 119, § 51A, report with DSS, and Eliza began therapy that was arranged by that agency. After some period of time, Eliza informed her counselor of the sexual conduct of the defendant.

The defendant was arrested and DSS removed the children from their mother's care. Carol and Pamela were placed in foster care with one Wanda Lopez (Wanda), a fresh complaint witness at trial. Carol told Wanda that the defendant had touched

her vagina with his mouth and hands. Pamela also told Wanda that the defendant had touched her vagina with his hand.

In his defense, both the defendant and the children's mother testified that no sexual abuse took place.

1. *The competency of Pamela and Carol to testify.* Pamela was five years old at the time of the trial and Carol was six years old. Prior to the children testifying as witnesses, the judge conducted competency hearings as to both. After the hearings, the judge ruled that both were competent to testify. The defendant objected and requested that the judge inquire further of both children. The judge overruled the objections. After Carol testified at trial, the defendant moved to strike her testimony on the ground that she did not know the difference between the truth and a lie. The judge denied the motion.

General Laws c. 233, § 20, provides that any person of "sufficient understanding" may testify as a witness. In this Commonwealth, courts apply "a two-prong test to determine competency: (1) whether the witness has the general ability or capacity to 'observe, remember, and give expression to that which she ha[s] seen, heard, or experienced'; and (2) whether she has 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.' " *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329 (1986), quoting from *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921). See *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 216 (1997). The same test applies, regardless of whether the witness is an adult, child, or subject to some disability. *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980). The party who presents a child as a witness has the burden of establishing that "the child is able to differentiate fact from fiction and has some sense of the immorality of lying." *Commonwealth* v. *Murphy*, 48 Mass. App. Ct. 143, 145 (1999).

Whether a witness is competent is first determined by the judge. *Commonwealth* v. *Widrick*, 392 Mass. 884, 888 (1984). See 6 Wigmore, Evidence § 1821 (Chadbourn rev. ed. 1976). The judge's determination will usually survive appellate scrutiny, *Commonwealth* v. *Whitehead*, 379 Mass. at 656,

because " '[m]uch which cannot be reproduced by the printed word depends on the child's appearance and manner.' " *Commonwealth* v. *LeFave*, 407 Mass. 927, 942 (1990), quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325. Therefore, " '[i]t is seldom that the discretion of the trial judge can be revised; its exercise must have been clearly erroneous to justify such action.' " *Commonwealth* v. *LeFave*, 407 Mass. at 942, quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325.

On appeal, the defendant argues that the judge failed to engage in any meaningful colloquy with the children in order to test their competency to testify. He further argues that Carol's responses during the colloquy and at trial demonstrate that the judge committed reversible error in ruling that she was competent.

By itself, the judge's colloquy with the children was inadequate. Regarding the first part of the competency test, the judge asked Pamela only one question (her age), and Carol three questions, in testing their ability or capacity to " 'observe, remember, and give expression to that which [they have] seen, heard, or experienced.' " *Commonwealth* v. *Brusgulis*, 398 Mass. at 329, quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325.

However, our analysis does not stop here. When an appellate court reviews a trial judge's ruling on the competency of a witness, it may examine the witness's trial testimony in order to determine whether error was committed by the trial judge. *Kentucky* v. *Stincer*, 482 U.S. 730, 743 (1987) ("appellate courts reviewing a trial judge's determination of competency also often will look at the full testimony at trial"). See *Commonwealth* v. *Lamontagne*, 42 Mass. at 219.

After examining the trial testimony of Pamela and Carol, we are satisfied that their responses to questions asked by the prosecutor and defense counsel demonstrated that they possessed the ability or capacity to observe, remember, and to relate what they saw, heard, or experienced. At trial, both were able to answer appropriately several questions about their ages, who they lived with, their friends, school, and activities. See *Malchanoff* v. *Truehart*, 354 Mass. 118, 120-121 (1968) (child competent to testify where she gave accurate answers to ques-

tions about her age, her education, and attendance at church); *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 755 (1995) (child competent to testify where she gave accurate answers to questions about her religion, her grade in school, and the subjects she studied). Therefore, the children's trial testimony filled in the gaps left by the trial judge's inadequate inquiries on the first part of the competency test.

We now return to the judge's inquiry of the children in regard to the second part of the competency test — "whether [they] had] 'understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment.' " *Commonwealth* v. *Brusgulis*, 398 Mass. at 329, quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325.

The judge's questions on this part of the test were sparse. Contrast *Commonwealth* v. *Brusgulis*, 398 Mass. at 334-337. For example, he did not ask either of the children specific questions about whether they understood the consequences of telling a lie. However, because of the considerable deference we afford to trial judges in regard to determinations of competency, we are satisfied, based on Pamela's answers to the judge during the colloquy, that she did understand the differences between the truth and a lie and her obligation to tell the truth. Therefore, we do not disturb the judge's ruling that Pamela was competent to testify.

Carol's responses to the judge's questions, however, demonstrated that she had difficulty with understanding the difference between the truth and a lie. The judge asked her the following question:

THE JUDGE: "And do you know what the difference is between the truth or a lie?"

CAROL: "No."

The judge then gave the following example in an attempt to illustrate the difference between the truth and a lie.

THE JUDGE: "In other words, do you know, like, when I was a kid, anyway, that sometimes us kids might do a

little fibbing if we wanted more candy or whatever it is, okay, and then there's telling the truth and saying, gee, I had that candy but I'd like to have some more. In other words, somebody who's fibbing or somebody who's telling the truth. Do you understand that?"

CAROL: "Yes."

The judge then told Carol, "It's very important here that you be true to your oath and that you tell the truth, okay?" Carol responded, "Yes," and she agreed to tell the truth.

The judge made specific findings that Carol, who was then six years old, "seems like a bright, nice, young woman, who knows the difference, as she testified, between right and wrong, and she knows the difference between telling the truth and fibbing, and she agrees that it's important for her to tell the truth and she agrees to do so." He concluded that she was competent to testify. Defense counsel objected, stating that the colloquy was not sufficient, especially in regard to her understanding of the difference between the truth and a lie. The judge overruled the objection and Carol proceeded to testify at the trial.

In response to the prosecutor's questions, Carol testified that she was there to tell the truth about her father. When asked by the prosecutor what her father did to her, Carol responded that he hit her in the face. She denied that he ever touched her anywhere else. The prosecutor was allowed to ask leading questions, over an objection, and Carol then told the jury of the acts that her father had committed that formed the basis of the indictments.

On cross-examination, defense counsel asked Carol a series of questions to test her memory. Then he asked Carol the following question:

DEFENSE COUNSEL: "Do you know the difference between telling the truth and a lie?"

CAROL: "No."

Defense counsel concluded his cross-examination after that question. There was no redirect examination of the witness.

Defense counsel moved to strike Carol's testimony on grounds that Carol was not competent to testify because she did

not know the difference between the truth and a lie. In denying the motion, the judge stated, "That's the exact same question that I asked her initially, and that's the exact same answer she gave to me. And then when I broke it down in six-year-old talk, she affirmed that she knew the difference between it and she would tell the truth, and she knew the importance of telling the truth here." Thus, by denying the motion, the judge reaffirmed his ruling that Carol was competent to testify.

"Although competency must of course be determined before a witness testifies, the judge may reconsider his decision, either sua sponte or on motion, if he entertains doubts about the correctness of the earlier ruling." *Commonwealth* v. *Brusgulis*, 398 Mass. at 331. Thus, the judge "may consider whether the witness's performance on the stand demonstrates a lack of awareness of the obligation to tell the truth or an inability to observe, remember, and recount." *Ibid.*

Here, Carol's response to defense counsel's question that she did not know the difference between the truth and a lie demonstrated that she did not understand the example the judge had given her during the colloquy. The answer called into question whether the judge's earlier ruling that Carol was competent was correct.

We hold that, in these circumstances, the judge was required to question Carol again as to her understanding of the difference between the truth and telling a lie and her obligation as a witness to tell the truth. See *Commonwealth* v. *Brusgulis*, 398 Mass. at 330. As a result of Carol's answer to the question, the judge had no factual basis to support a conclusion that Carol possessed that understanding. Therefore, his determination that Carol was competent was error, and he should not have allowed the jury to consider Carol's testimony.

In making our decision, we recognize that the modern trend is "in favor of enabling young children to testify, subject to impeachment of their credibility." *Commonwealth* v. *Corbett*, 26 Mass. App. Ct. 773, 776 & n.3 (1989). But if a witness testifies that she does not know the difference between the truth and a lie, that witness has no credibility because she does not "possess 'the necessary understanding to comprehend the nature of the obligation imposed by the oath.' " *Commonwealth* v. *Brus-*

*gulis*, 398 Mass. at 330, quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325-326. See *Commonwealth* v. *Lynes*, 142 Mass. 577, 580 (1886) (the witness at the time he or she takes the oath must understand "the nature of an oath, and the solemn responsibility which then rested upon her to speak the truth").

We are also aware that the question of competency " 'is almost always one of fact' and, unless clearly erroneous, the judge's determination will not be set aside." *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. 805, 806-807 (1994), quoting from *Commonwealth* v. *Tatisos*, 238 Mass. at 325.

In recent years, there has been a tremendous explosion of the number of child abuse cases in the courts. Young children are being called upon frequently to be witnesses in such cases. Judges must carefully craft questions posed to child witnesses to ensure that they are indeed competent. That did not occur here. Therefore, the defendant is entitled to a new trial on the indictments naming Carol as the victim.

2. *Claim of improper argument.* The defendant claims that certain of the prosecutor's comments in his closing argument, all the subject of objections, constituted reversible error. According to the defendant, the challenged comments appealed to the jury's sympathy and also vouched for the credibility of the Commonwealth's witnesses.

"In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in the light of the 'entire argument, . . . the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984), quoting from *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 885 (1984).

In his closing argument, defense counsel attacked the credibility of the Commonwealth's witnesses, especially that of Eliza, and also commented that the Commonwealth's officials had coached Carol's and Pamela's testimony.

A prosecutor may fairly respond to an attack on the credibility of the Commonwealth's witnesses. *Commonwealth* v. *Smiledge*, 419 Mass. 156, 160 (1994). Here, the prosecutor undoubtedly engaged in strong advocacy when he stated in his closing argument that defense counsel was attempting to place the blame on the children. But strong advocacy in a prosecutor's

argument is fair when it is based on the evidence in the case and in response to defense counsel's closing argument, as it was here. See *Commonwealth* v. *Rogers*, 43 Mass. App. Ct. 782, 785-786 (1997). Further, in response to the defendant's argument that the Commonwealth's witnesses were coached, the prosecutor stated that there was no evidence that supported the defendant's contention. Those remarks were a valid response to defense counsel's argument.

The prosecutor's remark that Wanda (the foster mother) was "as close to a saint as anyone we can produce in court" could have been better phrased. We have said that " '[a] certain measure of jury sophistication in sorting out excessive claims on both sides may fairly be assumed.' " *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997), quoting from *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). We conclude that none of the prosecutor's remarks in closing argument constituted reversible error.

3. *Ineffective assistance of counsel.* The defendant claims that his trial counsel was constitutionally ineffective both at the trial and at the sentencing hearing.

a. *Ineffective assistance at trial.* After the judge delivered his final instructions, but before the jury retired to deliberate, the prosecutor requested, and the judge gave, a specific unanimity instruction. There was no objection.

The defendant contends that trial counsel was ineffective because he did not object to the instruction even though its content was erroneous, and also because counsel did not request a specific unanimity instruction. The Commonwealth claims that counsel was not ineffective because the defendant was not entitled to such a charge.

" '[I]t is beyond dispute that the jury verdict in a criminal trial . . . must be unanimous.' " *Commonwealth* v. *Berry*, 420 Mass. 95, 111 (1995), quoting from *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980). "[W]hen the Commonwealth introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged." *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 442 (1996). In cases involving a resident child molester, however, where the

victim testifies to a pattern of repetitive and abusive conduct, of necessity encompassing a number of discrete acts, the danger of a lack of unanimity in the jury's verdict does not exist, and no specific unanimity instruction is necessary. *Id.* at 441-444. *Commonwealth* v. *Sanchez,* 423 Mass. 591, 600 (1996).

Even if we assume that a specific unanimity instruction was not required in this matter, the defendant was not harmed by the judge giving the instruction to the jury.[2] The instruction itself was not erroneous; therefore, the defendant was not prejudiced by the lack of an objection to its contents.

b. *Ineffective assistance at sentencing.* The judge conducted a sentencing hearing immediately after the jury returned their verdicts. The prosecutor gave specific recommendations on each of the guilty verdicts. The judge sentenced the defendant according to the prosecutor's recommendations. The sentences included three consecutive life sentences on two charges of rape of Eliza and one charge of rape of Carol. The judge sentenced the defendant to not less than nine nor more than ten years for indecent assault and battery on Pamela, to be served after the defendant's third life sentence. The defendant also received concurrent life sentences on the other rape charges of which he was found guilty, and concurrent sentences of not less than nine years nor more than ten years for each indecent assault and battery charge of which he was found guilty.

On appeal, the defendant claims that his trial counsel was ineffective because counsel (1) did not request a continuance of the hearing in order that a presentence investigation could be conducted and a report made; (2) did not present any mitigating factors; and (3) failed to request that the sentences be served concurrently.

We need not consider the issues raised by the defendant, because we have identified an error in the sentencing procedure that, in any event, requires resentencing on the remaining

---

[2]We note that the jury received special verdict slips attached to the corresponding indictments, and the original indictments had the children's names on them. Also, the indecent assault and battery verdict slips specified the act charged, e.g., "touching with hand on vagina," "touching chest with hand," "touching penis," to specific counts. Further, the judge in his final instructions identified specifically the indictments that corresponded to a named child.

indictments. See *Commonwealth* v. *Elder,* 389 Mass. 743, 746 (1983) ("We may decide cases on issues not raised by the parties").

The prosecutor told the judge that one factor on which the Commonwealth based its sentencing recommendations was that the defendant committed perjury when he testified.

"[A] trial judge may not consider a defendant's alleged perjury on the witness stand in determining the punishment to impose for a criminal conviction." *Commonwealth* v. *Coleman,* 390 Mass. 797, 806 (1984), citing *Commonwealth* v. *Murray,* 4 Mass. App. Ct. 493, 496-497 (1976). Here, the judge did not expressly state that one of the factors he considered in determining the length of the sentences he imposed on the defendant was his belief that the defendant committed perjury. However, by adopting the prosecutor's recommendations which, according to the prosecutor, were based on the defendant's alleged perjury, the judge may well have considered veracity as a factor in imposing the sentences. See *Commonwealth* v. *Juzba,* 46 Mass. App. Ct. 319, 324-325 (1999). Therefore, in the interest of justice, we believe there should be a resentencing on the indictments naming Pamela and Eliza as the victims.

The judgments of conviction on the indictments naming Carol as the victim are reversed, and the verdicts are set aside. The judgments of conviction on the indictments naming Pamela and Eliza as the victims are affirmed. The sentences on those convictions are vacated and the matter is remanded to the Superior Court for resentencing on those indictments.

*So ordered.*