NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-4

COMMONWEALTH

vs.

STECA THELEMAQUE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2018, a jury convicted the defendant of one count of distribution of heroin, and at a jury-waived trial, the judge convicted him of a second count.  The defendant also waived his right to a jury trial with respect to the second and subsequent offense portions of both indictments, and the judge found him guilty as to both.  On appeal, the defendant claims that no "good reason" existed for the judge to allow three witnesses, who had not participated in a prior out-of-court identification procedure, to make in-court identifications of the defendant and that their identifications were not reliable.  We affirm.

Discussion.  Because the defendant objected to all three in-court identifications, "we review to determine whether there was error and, if so, whether the error prejudiced the defendant."  Commonwealth v. Ortiz, 487 Mass. 602, 608 (2021).

"If there was error in the introduction of the identification testimony, the defendant is entitled to a new trial unless we are convinced that the identification here 'did not influence the jury, or had but very slight effect.'" Id., quoting Commonwealth v. Chalue, 486 Mass. 847, 858 (2021).

An in-court identification by an eyewitness who was present during the commission of the crime may be admitted in evidence where there is "good reason" for its admission. Commonwealth v. Crayton, 470 Mass. 228, 241 (2014). In Crayton, the Supreme Judicial Court explained that "good reason" might exist "where the eyewitness was familiar with the defendant before the commission of the crime" or "where the witness is an arresting officer who was also an eyewitness to the commission of the crime, and the identification merely confirms that the defendant is the person who was arrested for the charged crime." Id. at 242. "[I]n both of these circumstances, where the witness is not identifying the defendant based solely on his or her memory of witnessing the defendant at the time of the crime, there is little risk of misidentification arising from the in-court showup despite its suggestiveness." Id. at 243.

Here, there was "good reason" for the judge to allow all three witnesses to make in-court identifications. The testimony elicited from the witnesses during voir dire established that they were all "familiar with the defendant before the commission

2

of the crime[s]." Crayton, 470 Mass. at 242. Thus, the witnesses were "not identifying the defendant based solely on his or her memory of witnessing the defendant at the time of the crime[s], [and] there is little risk of misidentification arising from the in-court showup despite its suggestiveness." Id. at 243.

Detective Capasso was conducting surveillance while standing in a bush approximately ten to fifteen feet away from the defendant at the time one of the offenses occurred. He testified that he had known of the defendant for several years and that he was familiar with the defendant in both his personal and professional capacity. Detective Capasso had several mutual friends with the defendant's family, and the defendant was "well known" in Somerville, where Detective Capasso grew up. In his professional capacity, Detective Capasso knew the defendant through previous arrests, mainly during his time as a patrol officer in the narcotics unit. Detective Capasso testified that he had seen the defendant in person several times through surveillance, although he could not recall the exact dates and times. However, he was able to recall that he had seen the defendant three times in a specific apartment unit in Somerville before the commission of the crime. Detective Capasso also testified that he remembered seeing the defendant in the project development area where the apartment is located on a few

3

occasions, as "that was the place that [the defendant] would frequent and that was a former area that [Detective Capasso] would patrol when [he] first started the job."

Similarly, Detective Cicerone testified that although he could not remember the exact dates and times he had interacted with the defendant, he was familiar with the defendant before the commission of the crimes, which he observed from approximately over one hundred feet away. Specifically, Detective Cicerone recalled a prior arrest and that he personally had conversations with the defendant once or twice. Although the testimony is not clear as to how many of these sightings occurred before the commission of the crime, Detective Cicerone testified that he had "probably seen [the defendant] a dozen or so times."

The third witness, a civilian who purchased drugs from the defendant, testified that she was familiar with him through "[f]riends of friends." She had known him for five or so years, and they had "hung out" in person a few times. After she had gotten to know the defendant through a mutual friend, she would buy drugs from him in person, and had been doing so for a few months.

Contrary to the defendant's assertion, this case is unlike Ortiz, 487 Mass. at 610, where "[t]here was no evidence, for example, that [the officer] had any knowledge of the defendant

4

before the commission of the offense, nor evidence that [the officer] had any continued interactions with the defendant throughout the booking process." Here, as detailed above, there was sufficient evidence elicited at the voir dire hearing for the judge to conclude that each of the witnesses had enough prior knowledge of the defendant to make an in-court identification. Therefore, there was no error in the admission of the in-court identifications.

Even if there was error in the admission of all three in-court identifications, such error was not prejudicial. There was other, compelling evidence introduced at trial that established the defendant's guilt, including evidence of the drugs found in the possession of the two drug purchasers, which the defendant stipulated was heroin; evidence surrounding the defendant's attempt to flee to Atlanta after the crimes were committed; and the photograph of a drug purchaser's cell phone showing a telephone call to the defendant. Therefore, the in-

5

court identifications likely had little, if any, impact on the jury.[1]

                                 <u>Judgments affirmed</u>.

                                 By the Court (Meade, Massing & Sacks, JJ.[2]),

                                 Assistant Clerk

Entered:  January 23, 2024.

---

[1] The defendant also claims that the prosecutor improperly argued in closing that the second heroin purchaser did not identify the defendant because Detective Capasso had already done so.  We disagree.  After defense counsel highlighted that this purchaser did not identify the defendant from the stand, the prosecutor was free to respond to that argument.  See <u>Commonwealth</u> v. <u>Monzon</u>, 51 Mass. App. Ct. 245, 253-254 (2001).  In particular, the prosecutor properly argued that the lack of an in-court identification by the woman did not provide reasonable doubt in this case because she acknowledged that she called a telephone number labeled "Steca" to arrange to purchase drugs and because Detective Capasso provided identification of the defendant as the person who had met with the woman.  To whatever extent the prosecutor gave an inaccurate explanation for not asking the woman to identify the defendant, there was no substantial risk of a miscarriage of justice.

[2] The panelists are listed in order of seniority.