NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-583

COMMONWEALTH

vs.

BEATRICE ORTIZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was charged with murder in the first degree, G. L. c. 265, § 1, after she stabbed a man in the chest with a knife.  Following a jury trial at which she argued that she acted in self-defense, she was convicted of the lesser included offense of voluntary manslaughter.  On appeal, she argues that she is entitled to a new trial because the judge erred by denying (1) her motion to strike a witness's testimony on the basis that he was incompetent to testify and (2) her motions for a required finding of not guilty because the Commonwealth failed to disprove beyond a reasonable doubt that she acted in self-defense.  We affirm.

Discussion.  1.  Witness competency.  On the third day of trial, the Commonwealth called as a witness, Alton Bullock, who was present for the fight between the victim and the defendant.[1] Bullock testified that he was a client of the Department of Mental Health, had been so for more than forty years, and that he was told by medical providers that he suffered from schizophrenia.  When questioned about the fight, which occurred on August 19, 2019, he was able to recount the basic circumstances about where and when it occurred, that he had the impression that the victim and defendant were fighting about drugs or money, that knives were used in the fight, and that he intervened to protect the defendant because she was a woman.  However, when presented with a video of the incident that depicted him attempting to intervene in the conflict, he provided conflicting testimony as to whether he was on the video and began asserting that he could not remember the fight.[2]  The

_____

[1] Bullock was assisted by a nurse and, in response to questions from the prosecutor, testified that he had become paralyzed after falling from a fire escape in an episode unrelated to the stabbing, some months later.

[2] The defendant was sobbing loudly during parts of the testimony, and the judge told defense counsel he would remove her from the courtroom if she could not control herself.  After the witness began to have difficulty remembering what happened, the prosecutor suggested, in reference to the interruption, that "there was some sort of turn at the point that [the witness] was watching the defendant."  The noise in the courtroom appears to have caused the judge and counsel to have some difficulty in

2

defendant moved to strike the testimony, asserting that Bullock was not competent to testify.  The judge stated that he had concerns about Bullock's competency but denied the motion on the basis that the defendant had the opportunity to cross-examine Bullock effectively.[3]

"Whether a witness is competent is first determined by the judge."  Commonwealth v. Monzon, 51 Mass. App. Ct. 245, 248 (2001).  "The judge is afforded wide discretion -- indeed, is obliged -- to tailor the competency inquiry to the particular circumstances and intellect of the witness."  Commonwealth v. Thibeault, 77 Mass. App. Ct. 419, 424 (2010), quoting Commonwealth v. Brusgulis, 398 Mass 325, 329-330 (1986).  "The judge's determination will usually survive appellate scrutiny, because much which cannot be reproduced by the printed word depends on the [witness's] appearance and manner" (quotations and citation omitted).  Monzon, supra at 248-249.  "[I]t is seldom that the discretion of the trial judge can be revised; its exercise must have been clearly erroneous to justify such

_____

hearing the witness, but the record before us contains adequate clarity to permit our review of the defendant's appeal.

[3] The defendant did not cross-examine Bullock regarding the fight between the defendant and victim.  The judge stated that he thought this approach was a reasonable tactical decision.

action."  Thibeault, supra at 424, quoting Commonwealth v. LeFave, 407 Mass. 927, 942 (1990).

"General Laws c. 233, § 20, provides that any person of 'sufficient understanding' may testify as a witness."  Monzon, 51 Mass. App. Ct. at 248.  To determine competency, judges apply a well-established, two-prong test: "(1) whether the witness has the general ability or capacity to observe, remember, and give expression to that which [he] has seen, heard, or experienced; and (2) whether [he] has understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment" (quotations omitted).  Id.  See Commonwealth v. Tatisos, 238 Mass. 322, 325 (1921).  "A mentally ill person . . . 'is not necessarily an incompetent witness.'"[4] Commonwealth v. Piedra, 20 Mass. App. Ct. 155, 160 (1985), quoting Commonwealth v. Jimenez, 10 Mass. App. Ct. 441, 444 (1980).

On appeal, the defendant argues that the judge erred by denying her motion to strike Bullock's testimony, contending that he was incompetent to testify because his mental illness affected his ability to recall and describe events, and that the

---

[4] The defendant concedes this point.

4

testimony was "fraught with memory lapses, conflicting versions, or often both." To support this claim, she points specifically to Bullock's conflicting testimony regarding his memory of what was said prior to the fight and his confusion over whether he was on the video of the incident.

We decline to disturb the judge's ruling. Our review of the record reveals that Bullock's testimony demonstrated his ability to "observe, remember, and give expression to that which [he] has seen." Monzon, 51 Mass. App. Ct. at 248. In response to the prosecutor's questions, he was able to describe generally the location and time of the conflict, its participants, and his observations about their demeanors. This testimony was enough to allow the judge to properly conclude that Bullock was competent to testify. See Thibeault, 77 Mass. App. Ct. at 427-428 (competency found based on entirety of testimony despite inconsistency).

There can be no doubt that Bullock's testimony took a turn when he was pressed as to the finer details of what happened in the moments leading up to the fight. In particular, when presented with a video of the stabbing and questioned about his appearance in that video, he alternated between recognizing himself in the video and denying that he was depicted in it. During a sidebar, the judge acknowledged that he was "having

5

some difficulty with . . . the witness's competency to answer these questions."[5]  Unsurprisingly, the defendant's argument rests chiefly on the assertion that the witness's inconsistent testimony should require a finding that he was incompetent to testify because he was unable to remember the events in question.  We disagree, however, because "inconsistency is usually not a question of competency but rather a question of credibility, a matter left to the trier of fact except in very rare cases."  Commonwealth v. Lamontagne, 42 Mass. App. Ct. 213, 218 (1997), quoting Commonwealth v. Gamache, 35 Mass. App. Ct. 805, 809 (1994).  Understanding that "[t]he bar for competency . . . is not a high one," Commonwealth v. Tang, 66 Mass. App. Ct. 53, 63 (2006), and that "a judge may accept as competent for testimony a witness whose reliability is, in [his] judgment, at most, marginally sufficient," id., quoting Demoulas v. Demoulas, 428 Mass. 555, 564 (1998), we discern no ground on which to disturb the judge's ruling.

2.  Sufficiency of the evidence.  At the close of the Commonwealth's evidence and again at the close of all the

_____

[5] In response to this statement, the prosecutor stated that she had met with the witness the day prior and he had been able to clearly recite what had happened, and suggested that he was distracted by the defendant's sobbing.  The judge found that the witness was "nervous and upset about being [present in court] and[] having some difficulty, as anybody might."

evidence, the defendant moved for a required finding of not guilty. The judge denied each motion. The defendant appeals those rulings, arguing that the evidence could only support the conclusion that she acted in self-defense because she reasonably and actually believed that she was in immediate danger of death or serious bodily harm when the victim banged her head against a wall and continued to pursue her as she tried to escape him. We are not persuaded.

"In determining the validity of a claim challenging the sufficiency of the Commonwealth's evidence at trial, we review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014). The question is whether the evidence would permit a jury to find the defendant guilty, not whether it requires it. See Commonwealth v. Guy, 441 Mass. 96, 101 (2004), quoting Commonwealth v. Fisher, 433 Mass. 340, 342-343 (2001).

7

As the Supreme Judicial Court has explained:

"In a deadly force self-defense case, the Commonwealth may establish the absence of proper use of self-defense by proving beyond a reasonable doubt at least one of the following propositions: (1) the defendant did not actually believe that [she] was in immediate danger of death or serious bodily harm from which [she] could save [herself] only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that [she] was in immediate danger of death or serious bodily harm from which [she] could save [herself] only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances."

Commonwealth v. Grassie, 476 Mass. 202, 210 (2017).

We conclude that the evidence presented at trial was sufficient to permit the jury to find that the defendant did not act in self-defense. Most significantly, the Commonwealth presented the jury with a surveillance video that clearly depicted the conflict, as well as the moments leading up to it.[6] Viewed in the light most favorable to the Commonwealth, that video, which did not include sound, showed the defendant and the victim engaged in what appeared to be a heated exchange on a public sidewalk. As the conversation became more animated, the defendant repeatedly stepped toward the victim and the two

_____

[6] The Commonwealth also presented testimony from eight witnesses, including four law enforcement officers, a forensic video analyst, a medical examiner, the victim's sister, and, as discussed supra, Bullock.

8

gesticulated at one another.  Eventually the defendant initiated the violence by pushing the victim into the street.  Once the victim recovered, he threw a beverage container at the defendant, which she evaded.  The victim began assaulting the defendant, slamming her head into a wall repeatedly, and a knife fell from the defendant's clothing onto the ground.  As it did so, Bullock attempted to intervene by grabbing the victim and punching him.  While the victim was occupied with Bullock, the defendant fell to the ground, maintained her grip on the victim's shirt, picked up the knife, and stabbed him in the chest.  After doing so, she picked up some money that had fallen on the ground, and calmly retrieved her glasses from a ledge while Bullock continued to scuffle with the victim.

Moreover, the Commonwealth presented the recording of a police interview with the defendant that occurred early in the morning following the incident.  In that interview, she described how, prior to the fight, the victim had called her derogatory names, causing a bystander to laugh at her.  She further told detectives that she felt disrespected and told the victim and bystander "you guys need to stop disrespecting me." As a result of this treatment, the defendant "got mad" and would not back down because she was "tired of people walking all over

9

[her]."  This recording properly spoke to the defendant's state of mind at the time of the stabbing.

We are unpersuaded by the defendant's argument that the evidence was insufficient to disprove her claim of self-defense. Most importantly, considering the evidence in the light most favorable to the Commonwealth, the jury was entitled to determine that the defendant continued to grab onto the victim after he let her go and stabbed him while he was occupied with Bullock.  They were further entitled to determine that she did so rather than fleeing, which they could have reasonably concluded she had ample time to do.  See Commonwealth v. Leoner-Aguirre, 94 Mass. App. Ct. 581, 583-584 (2018).  Additionally, they could have reasonably concluded that she stabbed the victim rather than fleeing because she was upset by the victim's disrespectful treatment of her and had decided to stand up for herself instead of backing down.  Accordingly, we cannot say that the Commonwealth failed to provide sufficient evidence to permit a fact finder to conclude that the defendant did not act in accord with our self-defense jurisprudence.  See Grassie, 476 Mass. at 210-211.

The defendant largely supports her argument to the contrary by reciting the facts depicted in the video in a light more favorable to her -- emphasizing that the victim slammed the

10

defendant's head against a wall and attempted to pursue her after she stabbed him -- and contends that those facts show she was in fear for her life at the time of the stabbing.  This argument, however, relies on a view of the evidence that is at odds with our standard of review.  See Powell, 459 Mass. at 578-579.  See also Commonwealth v. Martino, 412 Mass. 267, 272 (1992) ("To the extent that conflicting inferences are possible from the evidence, it is for the jury to determine where the truth lies" [quotation omitted]).  The judge did not err in denying the defendant's motions for a required finding of not guilty.

Judgment affirmed.

By the Court (Green, C.J.,
  Desmond & Hershfang, JJ.[7]),

Clerk

Entered:  August 9, 2024.

---

[7] The panelists are listed in order of seniority.